521 S.E.2d 180

**Charles A. MOATS, Administrator of the Estate of Joanie Elliott, Plaintiff,**

v.

**PRESTON COUNTY COMMISSION, a Political Subdivision; and Valley Comprehensive Community Health Center, Inc., a West Virginia Corporation, Defendants.**

Nos. 25829, 25830.

Supreme Court of Appeals of West Virginia.

Submitted June 8, 1999.

Decided July 15, 1999.

Jacques R. Williams, Esq., Hamstead, Hamstead & Williams, Morgantown, West Virginia, Attorney for the Plaintiff.

Bruce A. Kayuha, Esq., Kelly J. Kimble, Esq., Rose, Padden & Petty, Morgantown, West Virginia, Attorneys for Preston County Commission.

Stephen R. Brooks, Esq., Carol Ann Marunich, Esq., Furbee, Amos, Webb & Critchfield, Fairmont, West Virginia, Attorneys for Valley Comprehensive Community Health Center, Inc.

John Preston Bailey, Esq., Christopher Paul Riley, Esq., Northwood Health Systems, Inc., for Amicus Brief.

MAYNARD, Justice:

The Circuit Court of Preston County presents us with four certified questions[1] from a wrongful death action arising out of an incident where an involuntary commitment detainee committed suicide in a bathroom adjacent to the Preston County Jail. The questions presented concern the liability of the Preston County Commission[2] and Valley Comprehensive Community Health Center, Inc. (hereinafter "Valley").

The certified questions and the circuit court's answers are as follows:

1. Is the Defendant Preston County Commission immune from suit and liability for damages to the Plaintiff under W.Va. Code § 29–12A–5(a)(3), by reason of enforcing or executing the lawful orders of the court, where: (1) there was, at the time of the self-inflicted injuries to the Plaintiff's decedent, a written court order remanding the Plaintiff's decedent to the custody of the Preston County Sheriff's Department (Preston County Commission) pursuant to an involuntary commitment proceeding; (2) the Plaintiff's decedent was, at the time said injuries were incurred, being held in the custody of the Preston County Sheriff's Department pur-

---

1. The Circuit Court of Preston County certified questions one and four in Case No. 25829 and questions two and three in Case No. 25830. For purposes of oral argument and decision, the cases were consolidated by order on February 16, 1999.

2. The Preston County Commission was sued as the employer of the Preston County Sheriff's Department and its personnel.

suant to said Order; and (3) while the Sheriff's Department had not yet received a written copy of said order, Sheriff's Department personnel were aware of the entry of the same.

Answer of the circuit court: No.

2. Are Valley Comprehensive Community Mental Health Center, Inc., and its representatives entitled to quasi-judicial immunity with regard to its treatment of a patient involved in an involuntary commitment proceeding?

Answer of the circuit court: No.

3. Does West Virginia Code Section 55–7B–7 require the Plaintiff to utilize an expert witness to testify that Valley deviated from the standard of care with regard to its actions after the involuntary commitment proceeding?

Answer of the circuit court: No.

4. Are the Plaintiff's claims barred by the fact that the decedent committed suicide?

Answer of the circuit court: No.

■ These questions were presented to this Court following the circuit court's denial of the defendants' motions for summary judgment. In Syllabus Point 5 of *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994), we held that:

West Virginia Code, 58–5–2 (1967), allows for certification of a question arising from a denial of a motion for summary judgment. However, such certification will not be accepted unless there is a sufficiently precise and undisputed factual record on which the legal issues can be determined. Moreover, such legal issues must substantially control the case.

Because there is a sufficiently precise and undisputed factual record on which the legal issues can be determined and because these legal issues substantially control the case, we find that the questions are properly certified under W.Va.Code § 58–5–2.

## I.

### FACTS

The facts in this case are undisputed. On January 9, 1995, a mental hygiene commissioner entered an order committing Joanie Elliott (hereinafter "Elliott") to the custody of the Preston County Sheriff's Department (hereinafter referred to as "Sheriff" or "Sheriff's Department") for transport to William Sharpe Hospital for examination. The order was entered following an involuntary commitment hearing wherein Jack Torsney (hereinafter "Torsney"), a representative of Valley, testified regarding Elliott's mental condition. The order indicated that Elliot had attempted to commit suicide the day before.

After the hearing, Torsney took Elliott to the Preston County Jail to await transport to the hospital. Torsney told Robert Chambers, the jail administrator, that he was going to the circuit clerk's office to pick up the order remanding Elliott to the Sheriff. He left Elliott sitting in a chair in the jail office. While Torsney was gone, Elliott entered a bathroom adjacent to the jail office and consumed an unspecified amount of bathroom cleaner causing injuries and resulting in her death approximately eight months later.

On July 30, 1997, Elliott's father, Charles A. Moats (hereinafter "plaintiff"), instituted a wrongful death action in the Circuit Court of Preston County against the Preston County Commission and Valley. The complaint alleged, *inter alia*, that the Preston County Commission breached its legal duty to exercise due care in its supervision of Elliott so as to minimize the risk that she would injure herself. The complaint also asserted that Valley failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances.

In March 1997, both the Preston County Commission and Valley filed motions for summary judgment. On April 17, 1998, the circuit court entered an order denying both motions. Thereafter, the circuit court certified the four questions set forth above to this Court.

## II.

### STANDARD OF REVIEW

■ "The appellate standard of review of questions of law answered and certified by a

circuit court is *de novo.*" Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996).

## III.

## DISCUSSION

### A.

█ The first question asks us whether the Preston County Commission is immune from suit and liability for damages to the plaintiff under the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va.Code § 29–12A–1 to –18 (1986) (hereinafter sometimes referred to as "the Act"), by reason of enforcing and executing the order of the mental hygiene commissioner. The record indicates that at the time Elliott injured herself, there was a written court order issued by the mental hygiene commissioner remanding her to the custody of the Sheriff. Elliott was being held pursuant to said order by the Sheriff, who had knowledge of the order but had not yet received a written copy of the order.

The Commission contends that the Sheriff was executing the order of the mental hygiene commissioner and therefore, is entitled to immunity pursuant to W.Va.Code § 29–12A–5(a)(3). According to the Commission, it is undisputed that a written order was signed contemporaneously with the pronouncement of the order by the mental hygiene commissioner. Likewise, it is undisputed that Chambers, the jail administrator, accepted custody of Elliott with the belief that he was compelled to do so by virtue of the court order. Thus, the Commission argues that the Sheriff was executing a lawful order and therefore, is entitled to immunity pursuant to the Act.

The plaintiff responds that the Sheriff's Department was not executing or enforcing the order because it did not have a written copy of said order in its possession at the time Elliott injured herself. The plaintiff maintains that Chambers just voluntarily assumed responsibility for Elliott as a favor to Torsney. According to the plaintiff, the Sheriff cannot enforce or execute an order until he receives it, and consequently, there is no immunity under the Act. Alternatively, the plaintiff argues that even if the Sheriff's Department was acting pursuant to the order of the mental hygiene commissioner, it, nonetheless, breached a special duty owed to Elliott thereby rendering it liable for its negligent acts.

W.Va.Code § 29–12A–5(3) provides that "a political subdivision [3] is immune from liability if a loss or claim results from . . . [e]xecution or enforcement of the lawful orders of any court." Accordingly, in the case *sub judice,* if the Sheriff's Department was acting pursuant to the order entered by the mental hygiene commissioner, it would be immune from suit pursuant to the Act. Given the facts of this case, we believe that the Sheriff was acting pursuant to the mental hygiene commissioner's order.[4]

█ As noted above, the mental hygiene commissioner's order was reduced to writing and was filed with the circuit clerk at the time Elliott was placed into the custody of

---

**3.** It is undisputed that the Preston County Commission is a "political subdivision" as set forth in the Act.

**4.** We recognize that the immunity granted by W.Va.Code § 29–12A–5(a)(3) for the "execution or enforcement of a court order" is of ambiguous and uncertain breadth, in its bare statutory language. We have applied this immunity language in the past without any substantial delineation of its parameters. *See, e.g., Mallamo v. Town of Rivesville,* 197 W.Va. 616, 477 S.E.2d 525 (1996); *Fisk v. Lemons,* 201 W.Va. 362, 497 S.E.2d 339 (1997). Certainly, this immunity cannot properly be read as swallowing or eliminating the host of political subdivision liabilities that our statute otherwise recognizes—just because and whenever a court order is involved. Cases involving court order immunity are intensely fact driven. Our further jurisprudence on this issue will be fleshed out according to the facts of the cases as they come before us in the future.

We further note concerning employee immunity under the Act that W.Va.Code § 29–12A–5(b) provides that an employee of a political subdivision is immune from liability unless:

(1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;

(2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

(3) Liability is expressly imposed upon the employee by a provision of this code.

the Sheriff. Although the Sheriff's Department did not have a copy of said order in its possession, it had knowledge of the order and accepted custody of Elliott from Torsney based on the order. Generally, an order is effective when a court announces it. *See* 56 Am.Jur.2d *Motions, Rules, and Orders* § 35 (1971). An oral order has the same force, effect, and validity in the law as a written order. In other words, the actual physical possession of a written order is not required to effectuate said order.

For example, in Syllabus Point 3 of *State ex rel. Walker v. Giardina*, 170 W.Va. 483, 294 S.E.2d 900 (1982), this Court held that " '[o]ne may be charged with contempt for violating a court's order, of which he has actual knowledge, notwithstanding that at the time of the violation the order had not yet been formally drawn up.' Syllabus Point 2, *Hendershot v. Handlan*, [162] W.Va. [175], 248 S.E.2d 273 (1978)." In *Giardina*, the respondents, two deputy sheriffs who were custodians of the Jefferson County Jail on the evening of February 9, 1982, refused to obey a stay order of this Court. On that date, Gary William Walker was being held on a fugitive warrant at the jail. About a month earlier, Williams had filed a petition for a writ of habeas corpus with the circuit court in opposition to extradition proceedings brought against him by the state of Florida. On February 9, 1982, the circuit court denied the habeas petition following an evidentiary hearing. That same day, the petitioner sought a stay of execution from this Court. The stay was granted by this Court at 8:00 that evening. The Clerk of this Court telephonically informed one of the deputies that a stay of execution had been granted by this Court. The deputy then notified Judge Pierre Dostert, Judge of the Circuit Court of Jefferson County, of the stay issued by this Court. Judge Dostert instructed the deputy to ignore our stay order, and as a result, Walker was released to Florida officials.

In finding that the deputies could be held in contempt, we stated that "[t]he fact that our order was orally communicated by telephone rather than in writing is of no relevance since the parties involved were aware of the contents of the order and its authentic-

ity." 170 W.Va. at 487, 294 S.E.2d at 904. *See also* Syllabus Point 2, in part, *State v. Farmer*, 173 W.Va. 285, 315 S.E.2d 392 (1983) ("a police officer may always make a warrantless arrest for a felony committed in his presence or when there is an outstanding warrant for the individual arrested, although the warrant may not be in the possession of the arresting officer"). "[S]ervice of a written order is not an essential predicate to hold a person in contempt for violating the order provided that he has reliable knowledge as to the contents of the order." *Id.* at 487–88, 294 S.E.2d 904–05 (citations omitted). In fact, in *Giardina*, Judge Dostert was also held in contempt and was later criminally convicted for failure to obey the order of this Court which was only communicated telephonically. *See In re Dostert*, 174 W.Va. 258, 263 n. 3, 324 S.E.2d 402, 407 n. 3 (1984). Because the Sheriff's Department had notice of the order entered by the mental hygiene commissioner in this case, we find that the Sheriff was acting pursuant to said order.

■ The plaintiff suggests that even if the Sheriff's Department was acting pursuant to the court order, it, nonetheless, breached a special duty owed to Elliott. Essentially, the plaintiff is asserting that the "special relationship exception" to the "public duty doctrine" applies to W.Va.Code § 29–12A–5(a)(3). "The public duty doctrine, simply stated, is that a governmental entity is not liable because of its failure to enforce regulatory or penal statutes." Syllabus Point 1, *Benson v. Kutsch*, 181 W.Va. 1, 380 S.E.2d 36 (1989). However, "[i]f a special relationship exists between a local governmental entity and an individual which gives rise to a duty to such individual, and the duty is breached causing injuries, then a suit may be maintained against such entity." Syllabus Point 3, *Kutsch*. "[T]he 'public duty doctrine' does not rest squarely on the principle of governmental immunity, but rests on the principle that recovery may be had for negligence only if a duty has been breached which was owed to the particular person seeking recovery." *Parkulo v. West Virginia Bd. of Probation and Parole*, 199 W.Va. 161, 172, 483 S.E.2d 507, 518 (1996).

In *Randall v. Fairmont City Police Dep't,* 186 W.Va. 336, 347, 412 S.E.2d 737, 748, (1991), we recognized that W.Va.Code 29–12A–5(a)(5) is coextensive with the common law public duty doctrine and thus, necessarily incorporates the common law special duty exception. In Syllabus Point 8 of *Randall,* we stated:

> *W.Va.Code,* 29–12A–5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for 'the failure to provide, or the method of providing, police, law enforcement or fire protection[,]' is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole. Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual.

Although this Court has been given the opportunity to extend the special duty exception to other sections of the Act, we have declined to do so. *See Hose v. Berkeley County Planning Comm'n,* 194 W.Va. 515, 460 S.E.2d 761 (1995) (holding that W.Va. Code § 29–12A–5(a)(9) dealing with loss or claims resulting from licensing powers is not subject to the special relationship exception); *O'Dell v. Town of Gauley Bridge,* 188 W.Va. 596, 425 S.E.2d 551 (1992) (holding that the special relationship exception does not apply to W.Va.Code § 29–12A–5(a)(11)).

■ The public duty doctrine and the Act are two separate and distinct entities, potentially achieving the same result of shielding a defendant from liability.[5] Nonetheless, the two schemes are markedly different, and exceptions applying to one may not be universally applied to the other. The special relationship exception to the public duty doctrine, for instance, is not an exception to the statutory immunities. *Randall* only permitted the special relationship to intervene in the statutory scheme because section a(5)

was determined to constitute the codification of the public duty doctrine. In other words, *Randall* did not "apply" the public duty doctrine to section (a)(5), but rather treated section (a)(5) as the legislative enunciation of the public duty doctrine. That reasoning is quite obviously not applicable to the remaining sixteen immunities set forth in the Act. Therefore, we hold that the public duty doctrine and its special relationship exception are not applicable to W.Va.Code § 29–12A–5(a)(3) which provides immunity from liability to a political subdivision if a loss or claim results from execution and enforcement of the lawful orders of any court. If immunity exists under section (a)(3), no inquiry into the public duty doctrine and its special relationship exception is necessary. Because we find that the Preston County Commission was acting pursuant to a court order at the time Elliott injured herself, we answer the first certified question affirmatively.

**B.**

■ The second question asks us whether Valley and it representatives are entitled to claim "quasi-judicial immunity" with regard to their treatment of Elliott. Relying upon our holding in Syllabus Point 10 of *Riffe v. Armstrong,* 197 W.Va. 626, 477 S.E.2d 535 (1996), Valley contends that it is entitled to claim quasi-judicial immunity because it acted in good faith during Elliott's involuntary commitment proceeding. In Syllabus Point 10, in part, of *Riffe,* we held that: "The defense of quasi-judicial immunity or privilege is generally available to one participating in the involuntary commitment process in good faith." Valley maintains that it was Elliott's counselor during the involuntary commitment hearing and it was continuing to act in that capacity at the time Elliott injured herself.

In response, the plaintiff contends that Valley is not entitled to claim quasi-judicial immunity because the mental hygiene proceeding was completed when Torsney delivered Elliott to the Sheriff's Department. In other words, the plaintiff maintains that Val-

---

**5.** "'Public duty doctrine is a principle independent of the doctrine of government immunity, although [we have recognized that] in practice it achieves much the same result.'" *Holsten v. Massey,* 200 W.Va. 775, 781, 490 S.E.2d 864, 870 (1997) (citations omitted).

ley cannot assert the defense of quasi-judicial immunity because Torsney was not performing an essential act of the mental hygiene process when he took Elliott to the Sheriff. We agree.

*Riffe* involved a mental hygiene patient who sued several health care providers contending that she was falsely imprisoned as the result of a botched involuntary commitment proceeding. The evidence indicated that the commitment was based on a materially false medical certification, which participants in the proceeding knew to be false. In discussing the potential liability of the doctor involved, we described the defense of quasi-judicial immunity as follows:

> 'An exemption similar to that of judges from personal liability for their judicial acts is extended to officers in the other departments of government whenever they are entrusted with the exercise of discretionary power and their determinations or decisions are, by their nature judicial .... This immunity exists only where the officer has jurisdiction of the particular case and is authorized to determine it; if the officer transcends the limits of authority the officer ceases, in the particular case, to act as a judge, and is responsible for all the consequences....' 32 Am.Jur.2d *False Imprisonment* § 109 (1995) (footnotes omitted).

197 W.Va. at 641, 477 S.E.2d at 550.

 In *Riffe*, the negligent physician's actions occurred during the performance of an essential aspect of the mental hygiene process, i.e., certification that the detainee was mentally ill. Here, Torsney's delivery of Elliott to the Sheriff was totally incidental, and not a necessary component of Valley's responsibilities of having Elliott certified which is the essence of the mental hygiene process. Clearly, the defense of quasi-judicial immunity was not intended to apply to employees of private mental health centers who are transporting individuals in their custody. Thus, we hold that a person substantively participating in the involuntary commitment process may only assert the defense of quasi-judicial immunity for actions taken during the deliberative and evidentiary aspects of the proceedings. To the extent that our decision in *Riffe v. Armstrong*, 197 W.Va. 626, 477 S.E.2d 535 (1996), conflicts with this holding, it is modified. Accordingly, we answer the second certified question negatively.[6]

### C.

 The third question asks us whether W.Va.Code § 55–7B–7 (1986)[7] requires the plaintiff to utilize an expert witness to establish that Valley deviated from the standard of care with regard to its actions during the involuntary commitment proceeding. Valley contends that an expert is necessary because the complaint clearly asserts a medical malpractice claim against it. To the contrary, the plaintiff maintains that sufficient evidence has been developed for a jury to decide that Valley was negligent toward Elliott. Citing *McGraw v. St. Joseph's Hosp.*, 200

6. Valley does not claim immunity under the Act. However, Northwood Health Systems, Inc., as amicus curiae, does assert that Valley's employees are entitled to the protections of the Act. Northwood argues that employees of mental health centers, while engaged in the involuntary commitment process, are acting as agents of the county, employed by the court and by statute, to perform examinations and provide services. Therefore, Northwood claims that while engaged in these types of proceedings, an employee of a mental health center is entitled to the protections of W.Va.Code § 29–12A–5. We disagree.

Recently, in Syllabus Point 2 of *State ex rel. Youth Services Systems, Inc. v. Wilson*, 204 W.Va. 637, 515 S.E.2d 594, (1999), we held that: "A private corporation that enters into a contract with an agency of this State for the provision of juvenile detention services does not meet the definition of a 'political subdivision' under the Governmental Tort Claims and Insurance Reform Act, West Virginia Code §§ 29–12A–1 to –18 (1999), and is therefore not entitled to the immunity provisions set forth in the Act." Our holding in *Wilson* would also apply to a corporation that has entered into a contract with a state agency to provide mental health services. Therefore, we find that Valley is not entitled to claim immunity under the Act.

7. W.Va.Code 55–7B–7 (1986) provides, in pertinent part:

> The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court.

W.Va. 114, 488 S.E.2d 389 (1997), the plaintiff avers that not all cases involving "health provider" negligence require an expert, and in this instance, the allegation by the Sheriff that Torsney failed to tell the jail administrator that Elliott was suicidal, coupled with Torsney's knowledge that Elliott was, in fact, suicidal, is sufficient to support a jury's finding that Torsney was negligent.

■ It is true that we held in Syllabus Point 9 of *McGraw* that "[t]he standard of nonmedical, administrative, ministerial or routine care in a hospital need not be established by expert testimony, because the jury is competent from its own experience to determine and apply a reasonable care standard." However, " '[i]t is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.' Syl. Pt. 2, *Roberts v. Gale*, 149 W.Va. 166, 139 S.E.2d 272 (1964)." Syllabus Point 1, *Farley v. Meadows*, 185 W.Va. 48, 404 S.E.2d 537 (1991). Although we believe that this certified question is a bit premature, we find, based upon the facts as set forth in the record before us, the plaintiff would probably need to present expert testimony to show that Valley deviated from the standard of care.

This case involves complicated medical issues, specifically, the manner and method of protecting someone who is suicidal. While there may be some circumstances where an expert is not needed, such as where a loaded gun is left in the presence of a mentally-ill person, that is not the case here. Valley's potential liability arises from its duties in relation to the involuntary commitment process. Despite the plaintiff's attempt to characterize this case as simply a failure to report Elliott's suicidal tendencies, we believe that determining whether Valley deviated from the standard of care involves more complex issues that are not within the common knowledge of lay jurors. Accordingly, we answer the third certified question affirmatively.

### D.

The final certified question asks whether the plaintiff's claim is barred because of the fact that Elliott committed suicide. The Commission contends that recovery for wrongful death is barred in this instance because the death was the result of an immoral and unlawful act of the party injured, i.e., suicide. On the other hand, the plaintiff contends that because Elliott was mentally-ill at the time, she did not commit suicide in the common law sense and therefore, did not commit an "immoral or unlawful act."

Although negligence actions seeking damages for the suicide of another have generally been barred because the act of suicide is considered deliberate and intentional, and therefore, an intervening act that precludes a finding that the defendant is responsible, courts have allowed such actions where the defendant is found to have actually caused the suicide or where the defendant is found to have had a duty to prevent the suicide from occurring. *McLaughlin v. Sullivan*, 123 N.H. 335, 461 A.2d 123, 124–25 (1983). *See also* Comment, Civil Liability for Causing or Failing to Prevent Suicide, 12 Loy. L.A.L.Rev. 967, 968 (1979). The latter exception, which is at issue in this case, has generally been applied to someone who has a duty of custodial care, knows that the potential for suicide exists, and fails to take the appropriate measures to prevent the suicide from occurring. Specifically, this exception has been applied to jails, hospitals, reform schools, and others having actual physical custody and control over such persons. *See* Note, Custodial Suicide Cases: An Analytical Approach to Determine Liability for Wrongful Death, 62 B.U.L.Rev. 177 (1982); 17 A.L.R.4th 1128 (1982). *See also Dezort v. Village of Hinsdale*, 35 Ill.App.3d 703, 342 N.E.2d 468 (1976) (defendants owed inmate/decedent a legal duty to use reasonable care to prevent his suicide and inmate/decedent not guilty of contributory negligence); *LaVigne v. Allen*, 36 A.D.2d 981, 321 N.Y.S.2d 179 (1971) (complaint alleging that Sheriff should have known of mental condition of prisoner who committed suicide stated a cause of action); *Bramlette v. Charter–Medical–Columbia*, 302 S.C. 68, 393 S.E.2d 914 (1990) (evidence established that psychiatrist's negligence was proximate cause of patient's death by suicide).

Without addressing this specific issue, this Court in *Martin v. Smith*, 190 W.Va. 286, 438

S.E.2d 318 (1993), affirmed a judgment against a psychiatrist in a wrongful death action where it was alleged that the psychiatrist negligently treated an involuntarily committed man resulting in his suicide. In *Martin*, the psychiatrist, Dr. David Smith, released the decedent on an eight-hour pass from the psychiatric unit of the Ohio Valley Medical Center. A few days earlier, Dr. Smith had abruptly discontinued the decedent's medications and informed him that he was going to be transferred to Weston State Hospital for more specialized care. Dr. Smith never advised the decedent's mother, who was mentally-retarded, that security precautions should be taken when the decedent was at home. While on his eight-hour leave from the hospital, the decedent shot himself at his mother's home and died instantly. The jury in *Martin* awarded the decedent's mother and daughter $650,000.00. On appeal, Dr. Smith claimed that the court erred by refusing to admit his testimony regarding conversations he had with the decedent. He also asserted that the court erred by permitting an expert witness to give rebuttal testimony without timely notice and by awarding damages for the decedent's expected loss of income. Dr. Smith never asserted that the plaintiff's claims were barred because the decedent committed suicide and that issue was not addressed on appeal.

Based on the foregoing authorities, we believe that recovery for wrongful death by suicide may be possible where the defendant had a duty to prevent the suicide from occurring. In order to recover, the plaintiff must show the existence of some relationship between the defendant(s) and the decedent giving rise to a duty to prevent the decedent from committing suicide. Generally, such relationship exists if one of the parties, knowing the other is suicidal, is placed in the superior position of caretaker of the other who depends upon that caretaker either entirely or with respect to a particular matter. *See* 12 Loy.L.A.L.Rev. at 990. Accordingly, because we find that a wrongful death action may be maintained where the decedent committed suicide, we answer the final certified question negatively.

## IV.

### CONCLUSION

After analyzing each of the questions certified from the Circuit Court of Preston County, we respond as follows:

1. Is the Defendant Preston County Commission immune from suit and liability for damages to the Plaintiff under W.Va. Code § 29–12A–5(a)(3), by reason of enforcing or executing the lawful orders of the court, where: (1) there was, at the time of the self-inflicted injuries to the Plaintiff's decedent, a written court order remanding the Plaintiff's decedent to the custody of the Preston County Sheriff's Department (Preston County Commission) pursuant to an involuntary commitment proceeding; (2) the Plaintiff's decedent was, at the time said injuries were incurred, being held in the custody of the Preston County Sheriff's Department pursuant to said Order; and (3) while the Sheriff's Department had not yet received a written copy of said order, Sheriff's Department personnel were aware of the entry of the same.

ANSWER: Yes.

2. Are Valley Comprehensive Community Mental Health Center, Inc., and its representatives entitled to quasi-judicial immunity with regard to its treatment of a patient involved in an involuntary commitment proceeding?

ANSWER: No.

3. Does West Virginia Code Section 55–7B–7 require the Plaintiff to utilize an expert witness to testify that Valley deviated from the standard of care with regard to its actions after the involuntary commitment proceeding?

ANSWER: Yes.

4. Are the Plaintiff's claims barred by the fact that the decedent committed suicide?

ANSWER: No.

Certified questions answered.