## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Ashlee R. Hull, individually and in her capacity
as co-executrix of the Estate of John Edward Hull, Sr.,
and Misty D. Adkins, individually and in her capacity
as Co-Executrix of the Estate of John Edward Hull, Sr.,
Plaintiffs Below, Petitioners**

**FILED**

**February 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 18-1028** (Kanawha County 18-C-673)

**Dr. Muhammed Samar Nasher-Alneam,
Neurology & Pain Center, PLLC,
Dr. Clark David Adkins, Bone and Joint Surgeons, Inc.,
Dr. Deleno H. Webb, III,
The Estate of Eric S. Webb, PLC,
and Area Psychiatric and Psychotherapy Group, Inc.,
Doe Physicians 1-99, Doe Pharmacies 1-99,
Doe Pharmacists 1-99, and Doe Corporations 1-99,
Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioners Ashlee R. Hull and Misty D. Adkins, by counsel Joseph H. Spano, Jr., appeal the Circuit Court of Kanawha County's October 18, 2018, Order Granting Defendants' Motions to Dismiss. Respondents Dr. Muhammed Samer Nasher-Alneam ("Dr. Nasher") and Neurology & Pain Center, PLLC ("NPC"), collectively referred to as the NPC respondents, by counsel Steven K. Nord and S. Taylor Hood, filed a response in support of the circuit court order. Respondents Dr. Clark David Adkins ("Dr. Adkins") and Bone and Joint Surgeons, Inc. ("Bone and Joint"), collectively referred to as the Bone and Joint respondents, by counsel, J. Dustin Dillard and Morgan E. Villers, also filed a response in support of the circuit court order. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Hull treated with Dr. Nasher at NPC from August 2012 until Dr. Nasher terminated their physician-patient relationship on April 28, 2014. Neither Dr. Nasher nor anyone from NPC treated Mr. Hull after that day.

Mr. Hull treated with Dr. Adkins at Bone and Joint at various times between April 2004 and August of 2014.[1] Neither Dr. Adkins nor any representatives of Bone and Joint had further contact with Mr. Hull after August of 2014. Mr. Hull died on January 7, 2016, from a self-inflicted gunshot wound to the head.[2]

On May 21, 2018, petitioners filed this Medical Professional Liability Act ("MPLA") action asserting medical professional negligence against respondents stemming from Mr. Hull's death.[3] In the complaint, petitioners alleged that Mr. Hull was treated by the respondents for complaints of chronic pain and sleeplessness resulting from multiple vehicle accidents and work-related injuries. Petitioners asserted that respondents failed to properly treat the causes of Mr. Hull's pain, were negligent in the prescribing of controlled substances, and/or failed to refer Mr. Hull to other specialists/physicians for treatment. They further alleged that, over the course of treatment, Mr. Hull became addicted to controlled substances, causing him to suffer anxiety, depression, and increased pain. Per petitioners, Mr. Hull advised respondents that the pain medication that he was receiving was not controlling his pain, and that he believed that the pain medication was making his pain worse. Petitioners further alleged that during the course of his treatment, Mr. Hull recognized that he was addicted to pain medication and requested assistance for his addiction. According to the complaint, respondents ignored Mr. Hull's request for other medical interventions, referrals and options and merely wrote Mr. Hull prescriptions for controlled substances. Petitioners alleged that, as a result of the respondents' actions, Mr. Hull's conditions "went undiagnosed, substantially progressed, substantially increased [his] risk of harm, created an unreasonable risk of addiction and related problems . . . all of which resulted in the intensification of [his] severe and debilitating pain, and ultimately resulted in Decedent's death." Petitioners alleged that Mr. Hull committed suicide due to his addiction, anxiety, depression, and pain.

---

[1] Petitioners maintain that Mr. Hull began treating at Bone and Joint in 1998 and that Dr. Adkins performed multiple surgeries on Mr. Hull, beginning in 2004.

[2] Petitioners were appointed to administer Mr. Hull's estate.

[3] Prior to the filing of this civil action, petitioners issued a Notice of Claim and a Screening Certificate of Merit to the Bone and Joint respondents. In response, the Bone and Joint respondents sent a letter to petitioners outlining deficiencies with the pre-suit submissions pursuant to *Hinchman v. Gillette*, 217 W. Va. 378, 618 S.E.2d 387 (2005). The Bone and Joint respondents noted that petitioners' expert, Dr. Qureshi, a physiatrist, was not qualified to render an expert opinion as to the care provided by Dr. Adkins, an orthopedic surgeon. They also noted that the screening certificate was deficient because it lumped the medical providers together and did not state how the Bone and Joint respondents deviated from the standard of care in Mr. Hull's case. In response to the *Hinchman* letter, petitioners' counsel sent an updated screening certificate of merit, which was again issued by Dr. Qureshi. The Bone and Joint respondents reiterated that Dr. Qureshi was not qualified to render an expert opinion. The sufficiency of the pre-suit submissions was not ruled upon by the circuit court and, therefore, is not presently before this Court.

In response to the complaint, respondents filed motions to dismiss.[4] On September 27, 2018, the circuit court held a hearing on the motions. At the hearing, the circuit court focused on the issue of whether petitioners' claims could be maintained in light of the general rule barring claims under West Virginia law based on the death of an individual who committed suicide. At the conclusion of the hearing, the circuit court requested proposed orders with findings of fact and conclusions of law from each party.

On October 18, 2018, the circuit court entered an order granting respondents' motions to dismiss. Citing *Moats v. Preston Cty. Comm'n*, 206 W. Va. 8, 16, 521 S.E.2d 180, 188 (1999), the court found that "negligence actions seeking damages for the suicide of another have generally been barred because the act of suicide is considered deliberate and intentional, and therefore, an intervening act that precludes a finding that the defendant is responsible . . . ." The circuit court further found that petitioners' claims do not fall within the narrow exception to the *Moats* rule, because Mr. Hull was not in the custodial care of respondents, respondents did not know that Mr. Hull was suicidal, and they did not have a duty or an opportunity to prevent his suicide. The circuit court did not address the respondents' remaining arguments in support of their motions to dismiss because it found the original grounds to be sufficient for dismissal. On November 16, 2018, this appeal followed.

Petitioners maintain that the circuit court improperly dismissed this matter. Under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, a party can file a motion requesting dismissal of a claim or counterclaim for "failure to state a claim upon which relief can be granted." W. Va. R. Civ. P. 12(b)(6). This Court has established that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v.*

---

[4] The NPC respondents raised multiple grounds for dismissal of the complaint. They argued that the claims were time barred due to the expiration of the statute of limitations, that the intentional act of suicide barred this negligence claim, and that Mr. Hull's suicide was too remote to the treatment provided by the NPC respondents and was, therefore, unforeseeable. The NPC respondents further asserted that petitioners failed to comply with the MPLA and its pre-suit filing requirements. Further, the NPC respondents argued that petitioners cannot maintain claims in their individual capacities because (a) their claims are not permissible under the wrongful death statute; (b) they failed to assert facts to support a claim for infliction of emotional distress; and (c) they cannot maintain claims for loss of parental consortium. Lastly, these respondents argued that petitioners failed to properly serve Dr. Nasher with the complaint.

The Bone and Joint respondents also filed a motion to dismiss, or in the alternative, a motion for summary judgment. They argued that, absent a very narrow exception that is not applicable here, West Virginia law precludes negligence actions seeking damages for the suicide of another. The Bone and Joint respondents also argued that petitioners' claims were barred by the statute of limitations. Lastly, the Bone and Joint respondents argued that petitioners failed to fully comply with the pre-suit requirements of the MPLA.

Given that the circuit court's ruling is premised upon only one of the grounds raised by the respondents, this memorandum decision will focus on the issue relied upon by the circuit court.

*Scott Runyan Pontiac-Buick, Inc.,* 194 W. Va. 770, 461 S.E.2d 516 (1995). Applying a de novo review to the record on appeal, we disagree with petitioners.

This Court has repeatedly held that motions to dismiss under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (citation omitted). Additionally, "the complaint is [to be] construed in the light most favorable to plaintiff, and its allegations are to be taken as true." *Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 605, 245 S.E.2d 157, 158 (1978).

Here, construing the complaint in the light most favorable to petitioners, petitioners can prove no set of facts to entitle them to the relief requested in the complaint. It is undisputed that Mr. Hull committed suicide and died as a result of a self-inflicted gunshot wound to the head. This Court has long held that "negligence actions seeking damages for the suicide of another have generally been barred because the act of suicide is considered deliberate and intentional, and therefore, an intervening act that precludes a finding that the defendant is responsible . . . ." *Moats*, 206 W. Va. at 16, 521 S.E.2d at 188.

Consistent with *Moats*, the circuit court in this matter found that petitioners' malpractice claims were barred, unless they fell within a recognized exception to the general rule barring claims based upon suicide. The circuit court further held that this Court has recognized only one narrow exception to the general rule "where the defendant is found to have had a duty to prevent the suicide from occurring" which applies to "someone who has a duty of custodial care, knows that the potential for suicide exists, and fails to take the appropriate measures to prevent the suicide from occurring." *Id.*[5] This exception has been applied to jails, hospitals, reform schools, and others having physical custody and control over the persons. *Id.*

In the instant case, the circuit court found, as a matter of law, that petitioners' claims do not fall within the narrow exception recognized in *Moats*. To fit within this exception, petitioners would have had to allege facts to satisfy each of these elements: custodial care, knowledge of the potential for suicide, and failure to take appropriate measures to prevent the suicide from occurring. *Id.* Specifically, the court found that "Mr. Hull was not in the custodial care of the Defendants, the Defendants had no knowledge that Mr. Hull was suicidal, and the Defendants had no duty or even an opportunity to prevent Mr. Hull from committing suicide."

Petitioners also argue that respondents were in a special relationship with Mr. Hull akin to a custodial relationship. We disagree.[6] The complaint does not allege that Mr. Hull was in the

---

[5] Petitioners argue that this Court should adopt a second exception to the general rule. Although this Court did discuss the possibility of an exception where the defendant "is found to have actually caused the suicide," that exception has not been adopted by this Court, nor do the facts of this case cause this Court to reconsider that exception.

[6] Alternatively, petitioners argue that Mr. Hull's suicide was a reasonably foreseeable outcome because respondents overprescribed opioids to Mr. Hull and failed to treat his addiction.

4

custodial care of respondents at the time he committed suicide, nor did petitioners allege that Mr. Hull had ever been in the custodial care of respondents. To the contrary, the record suggests that the respondents had not even had a patient-physician relationship with Mr. Hull for more than one year prior to his suicide. Inasmuch as petitioners allege no facts that would cause this case to fall within the single, narrow exception to the general rule, we concur with the circuit court's well-founded conclusion that Mr. Hull's suicide bars petitioners' claims.[7]

---

This Court declines to make this finding, especially where the record reflects that the respondents did not have a continuing relationship with Mr. Hull at the time of his death.

[7] Petitioners also argue that the circuit court improperly considered evidence outside of the complaint, including self-serving statements of respondents, when it granted respondents' motions to dismiss. Based upon a review of the record, we disagree. The circuit court's order is largely focused upon the allegations contained in the complaint, whether the complaint failed to state a claim against respondents, and whether relief could be granted under Rule 12(b)(6). This Court finds that that the circuit court's findings of facts and conclusions of law are not based upon any self-serving statements of respondents, but instead were based upon what was alleged in petitioners' complaint - and what was tellingly absent from the complaint - for example, the absence of any allegation that respondents had physical custody and control over Mr. Hull at the time of his suicide.

To the extent that the circuit court did consider information outside of pleadings, this Court finds that it was primarily necessitated by deficiencies within the complaint. Importantly, there is no indication that petitioners objected to these materials. Additionally, petitioners cannot claim surprise as petitioners themselves included factual assertions and attached ten exhibits to their response, which clearly indicates that petitioners knew that the circuit court would be considering matters outside the pleadings. Additionally, the Bone and Joint respondents titled their motion as a Motion to Dismiss/Motion for Summary Judgment.

If the motions were effectively converted into motions for summary judgment as alleged by petitioners, then Rule 56(f) of the West Virginia Rules of Civil Procedure would govern the issue. Although petitioners did file an affidavit as required by Rule 56(f), it was not in conformity with the rule. Rule 56(f) provides:

> **(f) When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56(f) affidavits must outline, with specificity, the materials which are not yet available to the party, but which, if obtained, engender an issue that is both genuine and material. Specifically, this Court has held that

Petitioners further argue that the circuit court erred when it did not consider petitioners' statutory prima facie negligence argument. To the extent that petitioners are attempting to impose liability based upon the violation of a statute or statutes, the violation of a statute is not the only element that must be shown for liability to attach. "In order to be actionable, such violation must be the proximate cause of plaintiff's injury." *Courtney v. Courtney*, 186 W. Va. 597, 603, 413 S.E.2d 418, 424 (1991). Here, Mr. Hull's death was the result of a self-inflicted gunshot wound – not an overdose on any prescriptions prescribed by respondents. Because the lower court recognized petitioners' inability to prevail on a negligence claim by virtue of the *Moats* rule, it did not err as to petitioners' statutory prima facie negligence arguments.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 24, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISQUALIFIED:**

Justice Margaret L. Workman

---

the party making an informal Rule 56(f) motion must satisfy four requirements. It should (1) articulate some plausible basis for the party's belief that specified "discoverable" material facts likely exist which have not yet become accessible to the party; (2) demonstrate some realistic prospect that the material facts can be obtained within a reasonable additional time period; (3) demonstrate that the material facts will, if obtained, suffice to engender an issue both genuine and material; and (4) demonstrate good cause for failure to have conducted the discovery earlier.

*Crum v. Equity Inns, Inc.*, 224 W. Va. 246, 254, 685 S.E.2d 219, 227 (2009) (citing *Elliott v. Schoolcraft*, 213 W. Va. 69, 73, 576 S.E.2d 796, 800 (2002)). Here, the affidavit submitted by petitioners failed to identify material facts, if obtained, which would make this case fall within the narrow exception described in *Moats*. As such, dismissal was proper without further discovery.