FILED
November 16, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0750 – *Christopher Morris v. Steven Corder, MD, et al.*

Armstead, Justice, dissenting, joined by Chief Justice Jenkins:

The circumstances of this matter are tragic. The family members of the decedent, Ms. Wade, are understandably grief-stricken. Although I am sympathetic to Petitioner's enormous loss, from a legal standpoint I agree with the circuit court's ruling that Petitioner's claims for medical negligence are barred by his failure to allege that the decedent was "in the custody" of Respondents at the time of her suicide. Therefore, I respectfully dissent from the majority's conclusion that the circuit court erred by granting Respondents' motion to dismiss Petitioner's claims.

This Court has long held that "negligence actions seeking damages for the suicide of another have generally been barred because the act of suicide is considered deliberate and intentional, and therefore, an intervening act that precludes a finding that the defendant is responsible[.]" *Moats v. Preston Cnty. Comm'n*, 206 W. Va. 8, 16, 521 S.E.2d 180, 188 (1999). The Court in *Moats* set forth the narrow circumstance in which a plaintiff may assert a claim for wrongful death by suicide:

> Recovery for wrongful death by suicide may be possible where the defendant had a duty to prevent the suicide from occurring. In order to recover, the plaintiff must show the existence of some relationship between the defendant(s) and the decedent giving rise to a duty to prevent the decedent from committing suicide. Generally, such relationship exists if one of the parties, knowing the other is suicidal, is placed in the superior position of caretaker of the other who depends upon that caretaker either entirely or with respect to a particular matter.

*Id.* at Syl. Pt. 6.

1

The circuit court cited this syllabus point and stated, "Plaintiff's Complaint does not allege that Defendants were in a relationship that gave rise to a duty to prevent the suicide such as that of a custodial caretaker." Further, the circuit court noted that this Court addressed the exception to our general bar on wrongful death by suicide claims in a recent memorandum decision, *Hull v. Nasher-Alneam,* No. 18-1028, 2020 WL 882087 (W. Va. Feb. 24, 2020) (memorandum decision), *cert. denied*, No. 20-1818, 2021 WL 4507880 (U.S. Oct. 4, 2021) ("*Hull*").

In *Hull*, issued approximately six months before the circuit court granted Respondents' motion to dismiss, this Court provided:

> Consistent with *Moats*, the circuit court in this matter found that petitioners' malpractice claims were barred, unless they fell within a recognized exception to the general rule barring claims based upon suicide. The circuit court further held that this Court has recognized only one narrow exception to the general rule "where the defendant is found to have had a duty to prevent the suicide from occurring" which applies to "someone who has a duty of custodial care, knows that the potential for suicide exists, and fails to take the appropriate measures to prevent the suicide from occurring." [*quoting Moats*, 206 W. Va. at 16, 521 S.E.2d at 188.] This exception has been applied to jails, hospitals, reform schools, and others having physical custody and control over the persons.

> In the instant case, the circuit court found, as a matter of law, that petitioners' claims do not fall within the narrow exception recognized in *Moats*. **To fit within this exception, petitioners would have had to allege facts to satisfy each of these elements: custodial care, knowledge of the potential for suicide, and failure to take appropriate measures to prevent the suicide from occurring.**

*Id.*, 2020 WL 882087, at \*3 (emphasis added).

2

Relying on this analysis, the Court in *Hull* concluded:

> The complaint does not allege that Mr. Hull was in the custodial care of respondents at the time he committed suicide, nor did petitioners allege that Mr. Hull had ever been in the custodial care of respondents. . . . Inasmuch as petitioners allege no facts that would cause this case to fall within the single, narrow exception to the general rule, we concur with the circuit court's well-founded conclusion that Mr. Hull's suicide bars petitioners' claims.

*Id.*

I believe the circuit court correctly determined that under *Moats*, and the *Hull* memorandum decision issued by this Court in February of 2020, Petitioner's claims for medical negligence are barred by his failure to allege that the decedent was "in the custody" of Respondents at the time of her suicide. While *Hull* was a memorandum decision, rather than a signed opinion, the issue of whether a plaintiff asserting a claim for wrongful death by suicide must establish that the decedent was in the custodial care of a defendant was squarely before the Court and addressed in that case.[1]

The majority's discussion of *Hull* is limited to a footnote in which it attempts to distinguish *Hull* from the instant case. The facts of the two cases are not identical;

---

[1] This Court has held that memorandum decisions may be cited as legal authority, and are legal precedent. Therefore, the circuit court's application of our ruling in *Hull* was proper. *See* Syl. Pt. 5 *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014) ("While memorandum decisions may be cited as legal authority, and are legal precedent, their value as precedent is necessarily more limited; where a conflict exists between a published opinion and a memorandum decision, the published opinion controls."). Further, I see no conflict between the Court's holding in *Moats* and our ruling in *Hull*. The Court in *Hull* explained the precise type of "special relationship" that is necessary to satisfy the narrow exception to the general bar on wrongful death by suicide claims. Providing a specific instance of what this "special relationship" entails (custodial care) does not conflict with syllabus point six of *Moats*.

3

however, there is no dispute that this Court addressed custodial care in the context of a wrongful death by suicide claim in *Hull*. The majority's departure from our ruling in *Hull* is not supported under the doctrine of stare decisis.

In syllabus point 2 of *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169 (1974), this Court held that "[a]n appellate court should not overrule a previous decision *recently rendered* without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." (emphasis added). Additionally, we have observed that

> [s]tare decisis . . is a matter of judicial policy. . . . It is a policy which promotes certainty, stability and uniformity in the law. It should be deviated from only when urgent reason requires deviation. . . . In the rare case when it clearly is apparent that an error has been made or that the application of an outmoded rule, due to changing conditions, results in injustice, deviation from that policy is warranted.

*Woodrum v. Johnson*, 210 W. Va. 762, 766 n. 8, 559 S.E.2d 908, 912 n. 8 (2001) (internal quotations and citations omitted).

This Court's ruling in *Hull* was "recently rendered"—it was decided six months before the circuit court granted the motion to dismiss. Moreover, I see no changing conditions or serious judicial error in interpretation sufficient to compel deviation from our rulings in *Moats* and *Hull*.

Finally, a number of courts outside of our jurisdiction have concluded that a plaintiff asserting a wrongful death by suicide claim must establish that a custodial

relationship existed between the decedent and a defendant.[2] As one court recognized, "a review of cases in other jurisdictions advances only one type of special relationship that consistently imposes a duty on an actor to prevent another's suicide, namely a relationship predicated on a custodial relationship." *Lee v. Corregedore*, 925 P.2d 324, 330 (Hawaii 1996) (Veteran's Services outpatient counselor with history of treatment and close personal knowledge of patient had no duty to prevent that patient's suicide); *see also McLaughlin v. Sullivan*, 461 A.2d 123, 125 (N.H. 1983) (suggesting that liability against a psychiatrist would be inappropriate over a non-hospitalized patient); *Christian v. Counseling Res. Assoc., Inc.*, 2014 WL 4100681, at *7-10 (Del. Super. July 16, 2014) (no special relationship between outpatient primary care physician and mental health counselor and decedent because no custody or control); *Waybright v. Frederick Cty., MD*, 528 F.3d 199, 207 (4th Cir. 2008) (applying Maryland law and stating, "a special relationship is all but synonymous with a custodial relationship." (citation omitted)); *Watson v. Adams*, 2015 WL 1486869, at *7 (D.S.C. Mar. 31, 2015) ("Both South Carolina and federal courts have rejected attempts to extend the duty to prevent suicide beyond the period of custody.").

Based on the foregoing, I respectfully dissent from the majority's decision to reverse the circuit court's order granting Respondents' motion to dismiss.

---

[2] As recognized by the majority, there is a split of authority on this issue from courts outside of our jurisdiction.