IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 22-0010

_____

FILED

**November 7, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CHRISTOPHER CHAFIN AND CHEAT LAKE URGENT CARE, PLLC,
Plaintiffs Below, Petitioners,

V.

BRIAN R. BOAL AND BOAL & ASSOCIATES, P.C.,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Monongalia County
The Honorable Susan B. Tucker, Judge
Civil Action No. 16-C-547

AFFIRMED

_____

Submitted: September 26, 2023
Filed: November 7, 2023

Jason E. Wingfield, Esq.
Gianola, Barnum, Bechtel
& Jecklin L.C.
Morgantown, West Virginia
Attorney for the Petitioners

Robert L. Hogan, Esq.
Avrum Levicoff, Esq.
The Levicoff Law Firm, P.C.
Pittsburgh, Pennsylvania
Attorneys for the Respondents

JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syllabus point 1, *Wickland v. American Travellers Life Insurance Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

2.      "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus point 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

3.      "'A motion to vacate a judgment made pursuant to Rule 60(b), W. Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion.' Syl. pt. 5, *Toler v. Shelton*, 157 W. Va. 778, 204 S.E.2d 85 (1974)." Syllabus point 4, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019).

4.　　"When a party to an action files a Rule 59(e) motion to alter or amend judgment, the only errors which benefit from the extended appeal period are those which are raised in the motion. The issues not assigned as grounds supporting an alteration or amendment of judgment retain the original filing period." Syllabus point 3, *Thompson v. Branches-Domestic Violence Shelter of Huntington, W. Va., Inc.*, 207 W. Va. 479, 534 S.E.2d 33 (2000).

**BUNN, Justice:**

Petitioners Christopher Chafin, M.D. and Cheat Lake Urgent Care, PLLC ("CLUC") (collectively "the Chafin Petitioners" or "Petitioners") appeal the December 9, 2021 order of the Circuit Court of Monongalia County denying their Rule 59(e) motion to alter or amend the July 30, 2021 order granting partial summary judgment[1] to Brian Boal and Boal & Associates, P.C. (collectively "the Boal Respondents" or "Respondents") in the underlying case asserting claims of accounting malpractice. The order at issue also denied Petitioners' Rule 60(b) motion for relief from an earlier circuit court order that excluded the report of the Chafin Petitioners' expert witness and precluded him from testifying at trial.

In this appeal, the Chafin Petitioners raise three assignments of error. First, Petitioners claim that the circuit court erred in striking their standard of care expert witness. They next argue that the circuit court erred in granting summary judgment to the Boal Respondents when expert testimony on the standard of care was not required to prove all claims for relief they have asserted against Respondents. Finally, they contend that the circuit court continuously abused its discretion and displayed obvious signs of prejudice towards Petitioners. We find no error and affirm the circuit court.

---

[1] In the underlying proceeding, Petitioners also asserted claims against several other defendants—Dr. David Anderson, Gillen Enterprises, LLC, Affordable Contractors, LLC, and Build It, LLC. It appears that the claims against these defendants remain pending below. While these defendants have counsel, they are not parties to this appeal and have not filed any documents with this Court.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

The Chafin Petitioners' complaint contains the following factual allegations. Dr. Chafin, Dr. David Anderson, and a third individual owned CLUC, a medical practice in Monongalia County, West Virginia. CLUC retained the Boal Respondents "to provide accounting and tax services to the practice"; Dr. Chafin also retained the Boal Respondents for personal accounting and tax services. These accounting and tax services included: (1) handling payroll for CLUC, (2) preparing profit and loss statements, (3) preparing tax forms, (4) arranging and handling the withholding of salary to pay federal and state taxes, and (5) filing and paying taxes. Despite the Boal Respondents provision of these services, in 2013, Dr. Anderson, "was accused of embezzling upwards of $500,000 from [CLUC]." Also, while the Boal Respondents withheld money from Dr. Chafin's paycheck, they did not pay the withheld money to the appropriate tax agencies.

Dr. Chafin initiated the underlying action in October 2016 by filing a complaint in the Circuit Court of Monongalia County[2] against the Boal Respondents

---

[2] Judge Phillip D. Gaujot was originally assigned to the underlying case; however, he recused himself, and it was reassigned to Judge Susan B. Tucker. In September 2017, the Chafin Petitioners filed a motion to disqualify Judge Tucker from presiding over the case alleging that she was potentially biased because she had made derogatory statements about the Chafin Petitioners in a related criminal case and because a member of the Chafin Petitioners' counsel's law firm had actively endorsed another candidate in the last circuit court judge election. This Court denied the motion by administrative order entered in October 2017.

regarding the accounting services they had provided.[3] Shortly thereafter, Dr. Chafin filed an amended complaint, and subsequently, the circuit court granted leave for Dr. Chafin to file a second amended complaint that added CLUC as a plaintiff.[4] Relevant to this appeal, the second amended complaint contained the following five counts against the Boal Respondents: (1) accounting malpractice, (2) breach of the CLUC contract,[5] (3) breach of the Chafin contract, (4) negligence, and (5) negligent misrepresentation. It further alleged a sixth count against Mr. Boal: breach of his fiduciary duty. Each of these counts is premised on the same failure to provide appropriate accounting and tax services to the Chafin Petitioners, and all counts, except for breach of fiduciary duty, explicitly contend that the Boal Respondents deviated from acceptable standards of care for accounting professionals.

Throughout the underlying proceedings, the parties engaged in written discovery.[6] The Boal Respondents served interrogatories on Dr. Chafin in May 2017.[7] Relevant to this appeal, Interrogatory No. 10 requested as follows:

---

[3] The complaint also named Dr. Anderson as a defendant due to his alleged embezzlement.

[4] Other defendants were also added, but they are not parties to this appeal.

[5] There is no written contract included in the approximately 700-page appendix record.

[6] It does not appear from the appendix record that the parties took any depositions.

[7] The Boal Respondents also served a request for production of documents on Dr. Chafin in May 2017, including a request to produce any expert witness reports and

With respect to any expert witness you expect to call at trial:

    a. Give a complete statement of all opinions expressed by that expert and the basis and reasons therefore;
    b. Identify the data or other information considered by the witness in forming the opinions;
    c. Describe and produce any exhibits to be used as summary or report to the witness's opinions; . . . .

Dr. Chafin initially responded with a litany of objections and asserted that the request was "premature and will be responded to in accordance with the [c]ourt's Scheduling Order." He subsequently provided amended responses reiterating the same objections.

On December 6, 2018, the circuit court entered its first scheduling order, setting the deadline for the Chafin Petitioners to disclose expert witnesses on May 1, 2019. Petitioners timely served their disclosure, naming Charles J. Russo, who was expected to testify to "the standard of care accounting professionals owe to [a] client and industry practices[,]"[8] and provided his curriculum vitae. Counsel for the Boal Respondents corresponded with the Chafin Petitioners' counsel via e-mail and telephone messages requesting additional information regarding the expert disclosures. When Respondents' counsel did not receive any supplementation, the Boal Respondents filed a motion to compel answers to their first set of interrogatories. Pertinent to this appeal, the Boal

---

curriculum vitae. Dr. Chafin's responses to these requests are not included in the appendix record.

[8] The disclosure also named a damages expert witness who is not at issue in this appeal.

4

Respondents argued that they had requested detailed expert opinions in May 2017 and that as of June 2019 they still had not received a full response to their interrogatory.[9] Neither Dr. Chafin nor the Chafin Petitioners filed a response. Days later, the circuit court entered an amended scheduling order, setting the deadline for the Chafin Petitioners to "supplement trial experts' opinions" on August 9, 2019, and moving the trial date to March 2020.[10]

On February 5, 2020, the Boal Respondents filed a motion in limine to preclude Mr. Russo from testifying as a standard of care expert, as they had not received any of the requested supplemental information. The Boal Respondents argued that the Chafin Petitioners (1) ignored the requirements of the circuit court's scheduling orders by failing to file a disclosure which "delineate[d] the scope and substance of" their experts' opinions, including Mr. Russo, and (2) failed to appropriately and timely respond to written

---

[9] In this same motion, the Boal Respondents sought to compel production of the Chafin Petitioners' tax records and moved for sanctions for Petitioners' failure to produce those records in violation of a court order. On August 8, 2019, the circuit court held a hearing on the motion to compel. During the hearing, the parties presented their arguments concerning the production of Petitioner Chafin's tax records but did not present any argument concerning the sufficiency of the Chafin Petitioners' expert witness disclosures. When asked by the court if there were any other issues, both parties indicated that there were not any other outstanding issues regarding discovery. The circuit court further granted an oral motion to move the previously scheduled trial to a later date due to incomplete discovery and because the current trial date was near "tax season," which would adversely impact the accountants involved in this matter.

[10] On August 14, 2019, the circuit court entered a second amended scheduling order modifying the deadline for completing discovery and setting the case for trial in June 2020. This order did not amend the August 9, 2019 deadline for the Chafin Petitioners to supplement with their trial experts' opinions.

discovery requesting the same detailed expert witness information. They further contended that the Chafin Petitioners' failure to timely and properly disclose their expert witness' opinions severely prejudiced them. Petitioners argued in response that the delay in providing the expert's reports was due to their lack of resources "necessary to hire the proper experts and to keep them working[,]" and not timely receiving documents, including from Respondents, that were necessary to produce an expert opinion report.

The Boal Respondents filed a motion for summary judgment, and on March 11, 2020, they filed a brief in support of their motion arguing that because the Chafin Petitioners had failed to properly disclose their expert's opinions, they could not prove the standard of care owed by the Boal Respondents and whether there was a deviation from it.[11] On June 8, 2020, the Chafin Petitioners filed Mr. Russo's expert witness report. In response, the Boal Respondents filed a motion to strike the report and preclude Mr. Russo from testifying at trial, contending that the report was untimely, contained conclusory statements, and failed to provide the substance of Mr. Russo's opinions.

---

[11] On April 17, 2020, the circuit court entered an order continuing the trial without setting a new trial date. Notably, this was a month into the Covid-19 pandemic, which caused widespread court closures. *See* Supreme Court of Appeals of West Virginia, Administrative Order (Mar. 16, 2020); Supreme Court of Appeals of West Virginia, Administrative Order, *Re: Judicial Emergency Declared* (Mar. 22, 2020); Supreme Court of Appeals of West Virginia, Administrative Order, *Re: Judicial Emergency Declared*, *Amended Order* (Apr. 3, 2020); Supreme Court of Appeals of West Virginia, Administrative Order, *Re: Judicial Emergency Declared, Second Amended Order* (Apr. 22, 2020).

The circuit court held a hearing on August 3, 2020, and entered an order the following day granting the Boal Respondents' motion to strike Mr. Russo's report and preclude him from testifying at trial.[12] Following the court's order striking the Chafin Petitioners' only expert witness as to the standard of care, the Boal Respondents filed an amended motion for summary judgment. In the amended motion, the Boal Respondents asserted that because the circuit court granted the motion to strike Mr. Russo, Petitioners could not establish a prima facie case for their claims. Days prior to the hearing on the amended motion, the Chafin Petitioners served a response in opposition to summary judgment arguing, for the first time, that other witnesses may provide expert testimony, additional discovery was necessary, and not all their claims required expert testimony.

On July 12, 2021, the circuit court held a hearing on the Boal Respondents' summary judgment and amended summary judgment motions.[13] The circuit court entered

---

[12] The Chafin Petitioners filed a petition for a writ of prohibition with this Court, seeking to prohibit enforcement of the order striking Mr. Russo's report and precluding his testimony at trial. We denied the writ by memorandum decision on March 17, 2021. This Court found that "petitioners did not inform the circuit court of their intent to seek this extraordinary writ nor did petitioners request an order containing findings of fact and conclusions of law that support the circuit court's decision" as required by Syllabus point 6 of *State ex rel. Allstate Insurance Co. v. Gaughan*, 203 W. Va. 358, 508 S.E.2d 75 (1998). *State ex rel. Chafin v. Tucker*, No. 20-0685, 2021 WL 1030320, at *4 (W. Va. Mar. 17, 2021) (memorandum decision). The Chafin Petitioners failed to request an appropriate order from the circuit court after our opinion was issued.

[13] That same day, the circuit court entered a final amended scheduling order setting the trial for June 14, 2022 to June 17, 2022 and/or June 21, 2022 to June 23, 2022 and extending discovery to March 31, 2022. There were no extensions for expert disclosures.

7

an order granting summary judgment in favor of the Boal Respondents on July 30, 2021, noting that it had previously struck Mr. Russo's expert report and precluded him from testifying at trial. It went on to find that "[a]lthough captioned under different legal theories, the [Chafin Petitioners'] claims all arise out of the same core of [sic] operative facts and basic allegations." The court continued:

> [A]ll of [the Chafin Petitioners'] claims against [the Boal Respondents] stem from the alleged failure to perform professional duties owed to the clients, and the alleged failure to perform such obligations in accordance with the applicable standards of professional care and conduct. It logically follows that these are matters well beyond the common knowledge and experience of an average lay juror. As such, expert testimony is needed to make out a *prima facie* case . . . .

Finally, it concluded, "Without liability expert testimony, [the Chafin Petitioners] cannot make out a *prima facie* case against [the Boal Respondents]." This order was certified as final pursuant to Rule 54(b).[14]

On August 13, 2021, Petitioners filed two motions: (1) a motion asking the circuit court to alter or amend the summary judgment order pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure[15] and (2) a motion seeking relief from the order striking Mr. Russo as an expert witness pursuant to Rule 60(b) of the West Virginia Rules

---

[14] Rule 54(b) of the West Virginia Rules of Civil Procedure permits a court to direct entry of a final judgment "as to one or more but fewer than all" claims or parties when certain conditions are met.

[15] *See* W. Va. R. Civ. P. 59(e) ("Any motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment.").

of Civil Procedure.[16] In the Rule 59(e) motion, the Chafin Petitioners argued that the "central issue for the [c]ourt to consider was whether, after having excluded the [Chafin Petitioners'] standard of care expert, Charles Russo, the [Chafin Petitioners] could still make a prima facie case . . . ." In other words, Petitioners contended that the circuit court made a clear error of law in granting summary judgment in favor of the Boal Respondents with respect to the breach of contract, negligence, negligent misrepresentation, and breach of fiduciary duty claims because none of those claims require a standard of care expert witness. The Chafin Petitioners also asserted that "amending the judgment would prevent an obvious injustice where the merits of this case should be considered by a jury." They contended:

> Because the [Chafin Petitioners] strongly believe that the law favors the [c]ourt ruling that the expert should not have been struck, the [o]rder granting the Boal [Respondents'] summary judgement [sic] should not have been granted and was not yet ripe for adjudication. Ultimately, the [c]ourt improperly balanced the evils—the [c]ourt has ruled that the [Chafin Petitioners], though engaging in the same conduct as the Boal [Respondents], have somehow affected the substantial rights of the Boal [Respondents] though they have not described any prejudice. Additionally, actions in this [c]ourt have actually impeded on [sic] the [Chafin Petitioners'] ability to recover by shielding the Boal [Respondents] from scrutiny. Said another way, the [c]ourt's balancing of the issues has revealed that it is much more detrimental to be late with a disclosure than it is to engage in accounting malpractice.

---

[16] Rule 60(b) of the West Virginia Rules of Civil Procedure allows for a motion to "relieve a party or a party's legal representative from a final judgment, order, or proceeding" for certain reasons enumerated in the Rule.

In the Rule 60(b) motion, the Chafin Petitioners sought relief from the circuit court's order striking Mr. Russo. Specifically, the Chafin Petitioners argued that their expert disclosure for Mr. Russo was timely, "even if detailed experts [sic] reports were not disclosed"; that the West Virginia Rules of Civil Procedure do not require disclosure of an expert report; and that there was no order from the circuit court mandating disclosure of an expert report. Admitting that Mr. Russo's report was disclosed after the deadline set forth in the second amended scheduling order, the Chafin Petitioners asserted that the Boal Respondents were not prejudiced by the late disclosure.

The Boal Respondents opposed both motions. By order entered December 9, 2021, the circuit court denied the Chafin Petitioners' Rule 59(e) and Rule 60(b) motions. In addressing the Rule 59(e) motion, the circuit court reiterated its previous finding that "when whittled down to their core, all counts . . . are claims of professional liability . . . ." The court further explained that Petitioners "entirely ignore[d] the substantial delay in their provision of the necessary expert disclosures and corresponding prejudicial effect on [the Boal Respondents] . . . ." Finally, the court found that the Rule 59(e) motion was untimely.

Regarding the Rule 60(b) motion, the circuit court initially noted that the Chafin Petitioners failed to indicate the subpart of the Rule under which they sought relief. The circuit court further found that the order striking Mr. Russo was interlocutory, so relief through Rule 60(b) was improper, and even if Rule 60(b) applied, relief was barred under each subpart of the Rule.

## II.

## STANDARD OF REVIEW

In reviewing the denial of a motion to alter or amend judgment pursuant to

Rule 59(e) of the West Virginia Rules of Civil Procedure we have held that

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

Because the underlying ruling challenged by the Chafin Petitioners pursuant to Rule 59(e)

was a grant of summary judgment, our review is plenary. *See* Syl. pt. 1, *Painter v. Peavy*,

192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is

reviewed *de novo*."). Moreover,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Id.* at Syl. pt. 4.

The standard of review of the circuit court's ruling on the Rule 60(b) motion

is as follows:

> "A motion to vacate a judgment made pursuant to Rule 60(b), W. Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such

11

discretion." Syl. pt. 5, *Toler v. Shelton*, 157 W. Va. 778, 204 S.E.2d 85 (1974).

Syl. pt. 4, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019). In Syllabus point 3 of *Toler v. Shelton*, 157 W. Va. 778, 204 S.E.2d 85 (1974), this Court further addressed the scope of review of the denial of a Rule 60(b) motion and explained that "[a]n appeal of the denial of a Rule 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order."

## III.

## DISCUSSION

On appeal, the Chafin Petitioners raise three assignments of error: the circuit court erred by (1) abusing its discretion in summarily barring Petitioners' expert from trial without any evidence of prejudice to Respondents; (2) granting summary judgment in favor of Respondents when expert testimony on the standard of care was not necessary; and (3) abusing its discretion and displaying obvious signs of prejudice towards Petitioners.

### A. Scope of Appellate Review

Given the procedural posture of this case, we first must determine the scope of this Court's appellate review. The Chafin Petitioners appear to frame this appeal as direct appeals of the order striking Petitioners' standard of care expert and subsequent order

12

granting summary judgment in favor the Boal Respondents.[17] As such, the Boal Respondents argue, the appeals were untimely filed and should be dismissed.[18] Despite

[17] Specifically, the Chafin Petitioners neither cite to nor analyze the standards of review for Rules 59(e) or 60(b) in their brief and, indeed, indicate that they are appealing "the Circuit Court's rulings regarding the exclusion of their expert and the resultant grant of summary judgment."

[18] In Syllabus point 2 of *Durm v. Heck's, Inc.*, this Court held that despite the language of Rule 54(b),

> [w]here an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that "no just reason for delay" exists and "directi[ng] . . . entry of judgment" will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect.

184 W. Va. 562, 401 S.E.2d 908 (1991) (some alterations in original). Following this decision, we determined that "entry of a *Durm*-type order, while allowing an aggrieved party to take an immediate appeal, does not require that such an appeal be taken at that time, and an aggrieved party may take an appeal at any time until the final appeal time in the case expires." *Eblin v. Coldwell Banker Residential Affiliates, Inc.*, 193 W. Va. 215, 222, 455 S.E.2d 774, 781 (1995) (per curiam).

In the present matter Petitioners only attach the circuit court's order denying the Rule 59(e) and 60(b) motions and failed to reply to Respondents' argument that they were improperly and untimely appealing the summary judgment order. We have previously noted that "West Virginia Rule of Appellate Procedure 5(b) requires that 'the party appealing shall file the notice of appeal and the attachments required in the notice of appeal form contained in Appendix A of these Rules.'" *Campbell v. CSX Transportation, Inc.*, No. 17-1034, 2019 WL 4257173, at *3 n.8 (W. Va. Sept. 9, 2019) (memorandum decision). *Accord* W. Va. R. App. P. 5. Further, "Appendix A requires that petitioners 'ATTACH COPIES OF ALL ORDERS BEING APPEALED.'" *Campbell*, 2019 WL 4257173, at *3 n.8. Accordingly, to the extent that the Chafin Petitioners are seeking to challenge the underlying order striking Mr. Russo or the order granting summary judgment those orders were not attached to the Notice of Appeal and will not be addressed except as explained herein. *See id.* ("To the extent petitioners seek to challenge the October 21, 2016, CSX

having the ability to file a reply brief to address this issue, the Chafin Petitioners opted to file none.

This Court *generally* "liberally construe[s] briefs in determining issues presented for review . . . ." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996). The Chafin Petitioners timely filed a motion pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure and timely filed a Notice of Appeal regarding the denial of that motion.[19] This Court has stated that "Rule 59 motions suspend the running of the time for appeal, and that time does not begin to run until the entry of an order deciding the issues raised by the motion." *Riffe v. Armstrong*, 197 W. Va. 626, 636, 477 S.E.2d 535, 545 (1996), *holding modified on other grounds by Moats v. Preston Cnty. Comm'n*, 206 W. Va. 8, 521 S.E.2d 180 (1999).[20] However, we subsequently held that "[w]hen a party

dismissal order, that order was not attached to the notice of appeal and is, therefore, not properly before this Court.").

[19] Despite the circuit court's finding that the Rule 59(e) motion was untimely, upon our review, we find otherwise. Pursuant to Rule 6(a) of the West Virginia Rules of Civil Procedure, when computing a period of time prescribed by the Rules, "the day of the act . . . from which the designated period of time begins to run shall not be included." Further, "[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday." *Id.* In addition, "intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation" when the time prescribed is fewer than 11 days. *Id.* Here, the circuit court entered its order granting summary judgment on July 30, 2021. Pursuant to Rules 59(e) and 6(a), any motion to alter or amend was due on August 13, 2021. The Chafin Petitioners filed their Rule 59(e) motion on that day.

[20] *See also* Syl. pt 7, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995) ("A motion for reconsideration filed within ten days of judgment being entered

to an action files a Rule 59(e) motion to alter or amend judgment, the only errors which benefit from the extended appeal period are those which are raised in the motion. The issues not assigned as grounds supporting an alteration or amendment of judgment retain the original filing period." Syl. pt. 3, *Thompson v. Branches-Domestic Violence Shelter of Huntington, W. Va., Inc.*, 207 W. Va. 479, 534 S.E.2d 33 (2000). In crafting this Syllabus point, we explained:

> "The practical effect of such a [Rule 59(e)] motion is to enlarge the time within which an appeal must be filed as to those matters which are the subject of the motion. . . ." *Wickland v. American Travellers Life Ins. Co.*, 204 W. Va. 430, 434-35, 513 S.E.2d 657, 661-662 (1998). (Citations omitted).

*Id.*, 207 W. Va. at 483, 534 S.E.2d at 37. *See also Acord v. Colane Co.*, 228 W. Va. 291, 301, 719 S.E.2d 761, 771 (2011) (per curiam) ("Upon review, the record shows that [the petitioner] did not challenge the circuit court's ruling on [the successor liability issue] in her Rule 59(e) motion. Consequently, that issue cannot be considered in this appeal.").

Considering all the above, we find that the most liberal reading of the Chafin Petitioners' brief and assignments of error lends itself to appellate review of the denial of the Rule 59(e) motion and the propriety of the underlying grant of summary judgment as

---

suspends the finality of the judgment and makes the judgment unripe for appeal. When the time for appeal is so extended, its full length begins to run from the date of entry of the order disposing of the motion."); W. Va. R. Civ. P. 72 ("The time for filing an appeal commences to run and is to be computed from the entry of any of the following orders: . . . granting or denying a motion under Rule 59 to alter or amend the judgment . . . .").

15

to the issue raised in the Rule 59(e) motion.[21] Additionally, the Chafin Petitioners filed a motion pursuant to Rule 60(b) and timely appealed the order denying that motion. As such, the correctness of the denial of the Rule 60(b) motion is also within our appellate review. With those limitations in mind, we consider the assignments of error on appeal.

### B. Summary Judgment and Rule 59(e) of the West Virginia Rules of Civil Procedure

We first consider the denial of the Chafin Petitioners' Rule 59(e) motion and the underlying order granting summary judgment in favor of the Boal Respondents.[22] In their Rule 59(e) motion, the Chafin Petitioners contended that the circuit court's summary

---

[21] The underlying summary judgment order that resolved each of Petitioners' claims against the Boal Respondents is designated as final pursuant to Rule 54(b). Appeal of that order would have been appropriate. *See* Syl. pt. 1, *Riffe v. Armstrong*, 197 W. Va. 626, 477 S.E.2d 535 (1996) ("In an order dismissing fewer than all of the parties or fewer than all the claims in a civil action, the inclusion of the language required by Rule 54(b) of the West Virginia Rules of Civil Procedure makes that order appealable immediately with respect to the dismissed parties and claims."), *modified on other grounds by Moats v. Preston Cnty. Comm'n*, 206 W. Va. 8, 521 S.E.2d 180 (1999).

While the circuit court's order denying the Rule 59(e) and 60(b) motions does not contain such language, we find that the order is final and appealable for similar reasons as the summary judgment order. *See* Syl. pt. 7, in part, *Erie Ins. Co. v. Dolly*, 240 W. Va. 345, 811 S.E.2d 875 (2018) ("'The key to determining if an order is final is not whether the language from Rule 54(b) of the West Virginia Rules of Civil Procedure is included in the order, but is whether the order approximates a final order in its nature and effect. . . .' Syl. Pt. 1, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).").

[22] This Court has held that "[a] motion under Rule 59(e) of the *West Virginia Rules of Civil Procedure* should be granted where: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; (3) it becomes necessary to remedy a clear error of law or (4) to prevent obvious injustice." Syl. pt. 2, *Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 717 S.E.2d 235 (2011).

judgment order "should be amended to allow those claims to proceed which do not require expert testimony to establish a standard of care."[23] Specifically, they argued that of the six causes of action they asserted against the Boal Respondents, only the accounting malpractice claim required expert testimony.[24]

The Chafin Petitioners' allegations in the second amended complaint can be distilled to the following: the Boal Respondents, as CLUC's and Dr. Chafin's personal accountants (1) failed to discover Dr. Anderson's embezzlement of funds from CLUC and (2) failed to ensure payment of Dr. Chafin's personal income taxes. The Chafin Petitioners do not dispute that expert testimony was required for the malpractice claim in the second amended complaint.[25] Instead, they argue that the other claims of breach of contract,

---

[23] The Rule 59(e) motion also asserted that the circuit court "is obligated to disregard any error or defect in the proceeding which does not affect the substantial rights of the parties and thus should amend the [o]rder granting the Boal [Respondents] [s]ummary [j]udgment." Buried in the one paragraph argument under this statement is that Petitioners' expert witness should not have been struck. Petitioners do not cite to any law, and there are scant facts recited in support. Given this cursory argument, it is difficult to discern what relief Petitioners were seeking. On appeal to this Court, the Chafin Petitioners make no specific reference to this one-paragraph argument. Accordingly, we decline to address it.

[24] The Chafin Petitioners' Rule 59(e) motion cites only one case and one statute in support of their position.

[25] On appeal, Petitioners also assert, in a conclusory manner, that the allegations in the second amended complaint were of a nature that an expert witness was not necessary because they fell within the common knowledge exception. However, Petitioners explicitly represented to the circuit court that they would prove their case using expert witness opinion testimony. During the hearing on the motion to exclude Mr. Russo, Petitioners' counsel proffered the following to the circuit court:

17

general negligence, negligent misrepresentation, and breach of fiduciary duty do not require expert testimony.

This Court has generally found that cases involving professional negligence/malpractice require expert testimony. *See, e.g.*, Syl. pt. 4, *J.C. by & through Michelle C. v. Pfizer, Inc.*, 240 W. Va. 571, 814 S.E.2d 234 (2018) ("'It is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.' Syl. Pt. 2, *Roberts v. Gale*, 149 W. Va. 166, 139 S.E.2d 272 (1964)."); *First Nat'l. Bank of Bluefield v. Crawford*, 182 W. Va. 107, 111 n.9, 386 S.E.2d 310, 314 n.9 (1989) ("As in most cases involving the question of professional malpractice, the issue is ordinarily resolved through expert testimony."). Other jurisdictions have also specifically found that accounting malpractice cases require expert witnesses. *See, e.g.*, *Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 218 (Minn. 2007) ("Thus, in order to survive a motion for directed verdict in an accountant malpractice case, a plaintiff must present expert testimony that identifies the applicable standard of care and opines that the accountant deviated from that standard and that the departure caused the plaintiff's damages."); *Kemmerlin v. Wingate*, 261 S.E.2d 50, 51 (S.C. 1979) ("Since

---

[Petitioners' Counsel]: Well, Your Honor, the allegations are such as that David Anderson couldn't have accomplished the embezzlement that he did[,] had the accountant been doing his job. And so, that goes directly to the accountant's standard of care. We have an accountant that says this is where the accountant messed up, and we have another accountant that says this is what that mistake was worth.

18

[accounting malpractice] is an area beyond the realm of ordinary lay knowledge, expert testimony usually will be necessary to establish both the standard of care and the defendant's departure therefrom.").

In a factually similar case, *Hassebrock v. Bernhoft*, 815 F.3d 334 (7th Cir. 2016), the plaintiffs "sued their former attorneys and accountants for professional malpractice, but they waited until after discovery closed to file their expert-witness disclosure." *Id.* at 336. The lower court struck the expert witness and found that "[w]ithout expert testimony, the [plaintiffs] could not prove their claims against either the attorneys or the accountants." *Id.* Accordingly, the lower court entered summary judgment in favor of the defendants. *Id.*

On appeal, the *Hassebrock* plaintiffs argued that the expert witness should not have been excluded, but even assuming the exclusion was proper, all the claims brought against the defendants in the complaint—negligence, breach of contract, breach of fiduciary duty, negligent misrepresentation, and aiding and abetting against the accounting firm—did not require an expert witness. *Id.* at 337, 340. The court concluded that the malpractice claim required expert testimony because it was a professional negligence claim and the plaintiffs did not sufficiently raise the common knowledge exception. *Id.* at 342. Considering the remaining causes of action, the court found that the "breach-of-contract claim directly incorporate[d] the professional duties of care that . . . require expert testimony . . . ." *Id*. Additionally, the contracts that were allegedly breached were ones for

professional services, and "[u]nlike an ordinary contract dispute, in this context the question of breach doesn't turn on whether the defendants complied with specific terms in the contract but rather on whether they rendered professionally competent services within the standard of care." *Id.* at 343. The court explained that "[a] plaintiff cannot be permitted, by recharacterizing the claim—whether by calling the [professional's action] a breach of fiduciary obligation or by contending that his contract with the law firm contained an implied promise not to commit such [acts]—to get around the requirement of presenting expert testimony." *Id.* (quotations and citation omitted) (some alterations in original). For similar reasons, the court also determined that the claims for breach of fiduciary duty and negligent misrepresentation failed. *Id.*[26]

Here, the Chafin Petitioners explicitly alleged in each count against the Boal Respondents, except the breach of fiduciary duty claim,[27] that there was a deviation from

---

[26] *See also Cohen & Co. v. Breen*, Cohen & Co. v. Breen, No. 100775, 2014 WL 4460363, at *5 (Ohio Ct. App. Sept. 11, 2014) ("The term 'malpractice' refers to professional misconduct, i.e. the failure of one rendering services in the practice of a profession to exercise that degree of skill and learning normally applied by members of that profession in similar circumstances. In the context of legal and medical malpractice, the courts have held that malpractice by any other name still constitutes malpractice, whether predicated on contract or tort. The Tenth District in *Muir* [*v. Hadler Real Est. Mgmt. Co.*, 4 Ohio App. 3d 89, 446 N.E.2d 820 (1982)] explained that professional misconduct may consist either of negligence or of breach of the contract of employment. It makes no difference whether the professional misconduct is founded in tort or contract, it still constitutes malpractice." (quotations and citations omitted)).

[27] The lack of an explicit allegation regarding the breach of standard of care is not fatal to the conclusion that the breach of fiduciary duty claim also requires expert testimony in this case. *See Hassebrock v. Bernhoft*, 815 F.3d 334, 343 (7th Cir. 2016) ("Even if the contract claim had been stated in a way that was less obviously duplicative

the acceptable standards of care related to the provision of accounting services. Additionally, each of these causes of action, including the breach of fiduciary duty, was premised on the same factual scenario: that the Boal Respondents failed to provide acceptable accounting services. Notably, Petitioners themselves represented to the court below that an expert witness was necessary to prove their claims for relief against the Boal Respondents. Given our prior determination that expert testimony as to the standard of care is necessary, and the lack of an expert here, we find that the circuit court did not err in granting summary judgment on all counts related to the Boal Respondents, and further did not err in denying Petitioners' Rule 59(e) motion to alter or amend.[28]

### C. Rule 60(b) of the West Virginia Rules of Civil Procedure

Next, we turn to the propriety of the circuit court's denial of the Chafin Petitioners' Rule 60(b) motion. As referenced above, our review of a lower court's denial of Rule 60(b) relief is limited to "only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order." Syl. pt. 3, in part, *Toler*,

---

of the negligence claims, summary judgment remains appropriate."). As described herein, the breach of fiduciary claim was based upon the same reasons as to why the Boal Respondents failed to provide acceptable accounting services.

[28] The Chafin Petitioners argue this outcome "would require expert testimony in every breach of contract, negligence[,] and fraud case . . . ." We disagree. As detailed herein, Petitioners explicitly asserted that almost every cause of action against the Boal Respondents included a deviation from the acceptable standard of care related to the provision of accounting services. Further, each of the causes of action was explicitly premised on the provision of professional accounting services. This fact pattern will most certainly not be the case for every breach of contract or negligence case.

157 W. Va. 778, 204 S.E.2d 85. Our function "is limited to deciding whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner." *Id.* at Syl. pt. 4, in part.

In their Rule 60(b) motion, the Chafin Petitioners requested relief from the circuit court's previous order striking their standard of care expert witness, Mr. Russo. The motion asserted that the circuit court failed to explain why this witness was excluded; that expert reports are not required under the West Virginia Rules of Civil Procedure; that the Boal Respondents' conduct contributed to any discovery delay; and that even if the disclosure was late or deficient, there was no prejudice to the Boal Respondents because there was time to cure it prior to trial. On appeal, the Chafin Petitioners, citing little law, reiterate these same arguments.

The Boal Respondents contend that the Rule 60(b) motion was an improper vehicle to obtain relief from that order. In support of their position, the Boal Respondents, relying on the language in Rule 60(b), argue that it applies only to final judgments and orders and that the order striking Mr. Russo was an interlocutory order. *See* W. Va. R. Civ. P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a *final* judgment, order, or proceeding . . . ." (emphasis added)).

22

We have previously concluded that "Rule 60(b) by its plain terms applies to a '*final* judgment, order, or proceeding.' (Emphasis added)." *State ex rel. Crafton v. Burnside*, 207 W. Va. 74, 77, 528 S.E.2d 768, 771 (2000) (quoting W. Va. R. Civ. P. 60(b)). "'Interlocutory orders and judgments are not within the provisions of 60(b), but are left to the plenary power of the court that rendered them to afford such relief from them as justice requires.'" *Caldwell v. Caldwell*, 177 W. Va. 61, 63, 350 S.E.2d 688, 690 (1986) (quoting 7 J. Moore, *Moore's Federal Practice* ¶ 60.20 (2d ed.1985)). Further, this Court has recognized that when an order is certified pursuant to Rule 54(b), but does not fully resolve the litigation below, our review of "preceding non-appealable orders" is permissible "only when the errors in the Rule 54(b) order arise from the earlier non-appealable orders." *WW Consultants, Inc. v. Pocahontas Cnty. Pub. Serv. Dist.*, 248 W. Va. 323, ___, 888 S.E.2d 823, 831 (2023). *See also Jane Doe-1 v. Corp. of President of The Church of Jesus Christ of Latter-day Saints*, 239 W. Va. 428, 445, 801 S.E.2d 443, 460 (2017) (considering in limine rulings along with an appeal from a Rule 54(b) order granting summary judgment where "the in limine rulings and the summary judgment rulings are inextricably entwined").

It is undisputed that the order striking Mr. Russo as an expert witness and precluding him to testify at trial is generally an interlocutory order. *See Chafin*, 2021 WL 1030320, at *4 (finding that this order was a non-appealable interlocutory order). Moreover, only partial summary judgment has been granted as there are other parties to the case not at issue in this appeal. While the summary judgment order as to the Boal

23

Respondents was certified pursuant to Rule 54(b), the Chafin Petitioners have failed to demonstrate that the certification renders the order striking Dr. Russo properly reviewable by this Court. Despite the circuit court and the Boal Respondents both asserting below that Rule 60(b) is an improper vehicle to challenge the order striking Mr. Russo due to its interlocutory nature, the Chafin Petitioners failed to make any argument explaining how this order is reviewable pursuant to Rule 54(b). Respondents once again challenged its interlocutory nature in their response brief in this Court and Petitioners again failed to address the issue in a reply brief. Because the Chafin Petitioners have failed to sufficiently identify below and brief on appeal how they may seek relief from an otherwise interlocutory order,[29] we find the circuit court did not abuse its discretion in denying relief under Rule 60(b). Consequently, the Chafin Petitioners are not entitled to relief from that order on appeal.[30]

---

[29] *See State v. Crane*, No. A-1-CA-39878, 2022 WL 17820777, at *2 (N.M. Ct. App. Dec. 20, 2022), *cert. denied* (Mar. 28, 2023) ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." (quotations and citations omitted)). *C.f. Conestoga Titleholder, LLC v. Wilson*, 504 P.3d 1088 (Kan. Ct. App. 2022) ("There must be an explanation as to why the issues are properly before this court if the issues were not raised before the district court. Supreme Court Rule 6.02(a)(5)). [The petitioner] provides no explanation for why the issues are now properly before us. Thus, we decline to address [those] claims.").

[30] The Chafin Petitioners additionally contend that Judge Tucker was prejudiced and/or biased against them throughout the entirety of the proceedings below. This issue was not raised in either the Rule 59(e) or the Rule 60(b) motions. Accordingly, we decline to address it on appeal.

**IV.**

**CONCLUSION**

We find that the circuit court did not err by granting summary judgment to the Boal Respondents or by failing to alter or amend the judgment. Further, the circuit court did not err in denying the Chafin Petitioners' motion for relief from judgment or order. For the foregoing reasons, the December 9, 2021 order of the circuit court is affirmed.

Affirmed.