STATE *ex rel.* JAMES MICHAEL BURTON

*v.*

WILLIAM WHYTE, *Superintendent, Huttonsville*

*Correctional Center*

(No. 14418)

Decided June 26, 1979.

*Katz, Kantor, Katz, Perkins & Cameron and David M. Katz* for petitioner.

*Chauncey H. Browning*, Attorney General, *and David F. Greene*, Assistant Attorney General, for respondent.

MILLER, JUSTICE:

James Michael Burton in this original writ of habeas corpus contends that his guilty plea was based on incompetent advice of counsel and that his conviction should therefore be set aside. We disagree and deny the writ.

The central issue is whether Burton's trial counsel was incompetent in advising him to plead guilty to a charge of grand larceny when a pretrial motion to suppress Burton's written confession was denied. The principal challenge to the confession was that it was given by Burton some two days after he had conferred with a municipal police court judge who advised him to cooperate with the police and disclose his involvement in the grand larceny. The contention is that the judge is an officer of the State and that the confession was induced or rendered involuntary by his advice.

The judge was a personal acquaintance of Burton and several months earlier had arranged for Burton to surrender to the authorities on a breaking and entering charge pending in the Circuit Court of Mercer County. The conversation in question here occurred when the judge observed Burton at the police station where he was being processed on the grand larceny charge, and expressed surprise on seeing him. Burton asked if he could speak privately with the judge, whereupon the judge took him into a room. The recollections of Burton and the judge of this conversation are essentially the same.

Burton told the judge that he and his brother had been arrested for the grand larceny of a cash register from a restaurant. He stated he was worried about the impact of this new offense on the possibility of receiving probation on the breaking and entering charge, which

his attorney was endeavoring to accomplish. The judge recalled advising him that if he expected "any hope for probation at all, that the only thing that he could do is cooperate with the police, tell them what happened. . . ." In connection with the grand larceny charge, the judge also informed Burton that the Circuit Court would appoint an attorney for him if Burton "thought he was not guilty of this or if he wanted to contest it, whether he thought he was guilty of it or not. . . ."

Burton indicated to the judge that he would consider the matter. Two days later, while still in jail, he voluntarily indicated to the authorities that he wanted to take them to the site where the cash register was hidden. During this trip, Burton was given his *Miranda* warnings and he subsequently furnished the written confession. It is not disputed that he had also been given his *Miranda* rights at the time of his arrest, but at that time had declined to discuss his involvement in the grand larceny.

Another ground for the alleged invalidity of the confession is that at the time Burton was arraigned on the day of his arrest, he filled out a magistrate's form and on it indicated that he desired counsel. He thus claims that the confession is rendered invalid because it was made without the presence of counsel. It appears, however, that the confession was not brought about by interrogation after the request for counsel. This issue was not raised in the trial court at the *in limine* hearing on the confession.

I.

Essentially, the relator contends that his guilty plea was brought about by the trial court's refusal to suppress his confession. We discussed a similar issue in *State v. Sims,* _____ W. Va. _____, 248 S.E.2d 834 (1978), where the defendant contended that his guilty plea was coerced as a result of the trial court's *in limine* ruling that an unintentional shooting during the commission of a burglary fell within the felony-murder rule. In *Sims,* we observed that once a guilty plea is entered "the focus

is not upon the court's ruling, but the competency of defendant's counsel in advising the guilty plea in light of the court's ruling." ____ W. Va. at ____, 248 S.E.2d at 838.

This statement in *Sims* was based in part on our earlier case of *Call v. McKenzie,* ____ W. Va. ____, 220 S.E.2d 665 (1975), which discussed some aspects of attacking a guilty plea by way of habeas corpus. Both *Call* and *Sims* followed the United States Supreme Court approach as set out in the Brady Trilogy, *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S.Ct. 1463 (1970); *McMann v. Richardson,* 397 U.S. 759, 25 L. Ed. 2d 763, 90 S.Ct. 1441 (1970); *Parker v. North Carolina,* 397 U.S. 790, 25 L. Ed. 2d 785, 90 S.Ct. 1458 (1970); and in its sequel, *Tollett v. Henderson,* 411 U.S. 258, 36 L. Ed. 2d 235, 93 S.Ct. 1602 (1973).[1]

*Sims* presented a rather simple problem, since we found that the lower court's ruling was manifestly correct, and therefore that counsel had acted quite competently in advising the guilty plea. We established in its

---

[1]We acknowledged in Note 2 of *State v. Sims,* ____ W. Va.____, 248 S.E.2d 834, 838 (1978), that incompetency of counsel is not the only ground on which a guilty plea can be challenged, since incompetency of counsel is "part of the more general rule that requires a guilty plea to be made voluntarily, upon proper advice and with a full understanding of the consequences." The United States Supreme Court, in explaining the rationale of the Brady Trilogy and *Tollett,* elaborates on the role of factual guilt after a guilty plea has been entered, as stated in Note 2 of *Menna v. New York,* 423 U.S. 61, 62, 46 L. Ed. 2d 195, 197, 96 S.Ct. 241, 242 (1975):

"The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established. Here, however, the claim is that the State may not convict petitioner no matter how validly his factual guilt is established. The guilty plea, therefore, does not bar the claim." [Emphasis in original]

Syllabus Point 3 the following general test as to incompetent advice of counsel in connection with a guilty plea:

"Before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error."

The present case involves a somewhat more complicated issue, since the constitutionality of the defendant's confession is a more complex legal question. An argument can be made that a police court judge occupies a position of authority in the State's legal system. The advice to the defendant to cooperate and to tell them what happened about the grand larceny in order to maintain the possibility of probation on the earlier breaking and entering charge might be construed as a sufficient inducement to render the subsequent confession involuntary, on the theory that the police court judge had the implied authority to carry out the promise forming the inducement. *See, e.g., Bram v. United States,* 118 U.S. 532, 42 L. Ed. 568, 18 S.Ct. 183 (1897); *Grades v. Boles,* 398 F.2d 409 (4th Cir. 1968); *Allen v. State,* 53 Ala. App. 66, 297 So.2d 391 (1974), *cert. denied,* 292 Ala. 707, 297 So.2d 399; *State v. Tardiff,* ____ Me. ____, 374 A.2d 598 (1977); *State v. Stein,* 70 N.J. 369, 360 A.2d 347 (1976); *State v. Benavidez,* 87 N.M. 223, 531 P.2d 957 (Ct. App. 1975); *State v. Setzer,* 20 Wash. App. 46, 579 P.2d 957 (1978); *see generally* Annot., 7 A.L.R. 419 (1920).

Our law on this point is not crystalline. In *State v. Casdorph,* ____ W. Va. ____, 230 S.E.2d 476, 480 (1976), we held that a casual adjuration by a police officer to the defendant to tell the truth "unaccompanied by a specific promise to exact leniency from the prosecuting authorities," did not vitiate the resulting confession. In *State v. Goldizen,* 93 W. Va. 328, 334, 116 S.E. 687, 689 (1923), the emphasis was on someone in authority obtaining a confession from the accused "by some induce-

ment of a temporal or worldly character in the nature of a threat, or some promise or benefit held out . . . ." *Cf. State v. Mayle,* 108 W. Va. 681, 152 S.E. 633 (1930); *State v. Parsons,* 108 W. Va. 705, 152 S.E. 745 (1930); *State v. Morgan,* 35 W. Va. 260, 13 S.E. 385 (1891).

Burton's other ground for attacking the confession is that it was given after he had requested counsel at his arraignment before a magistrate, but before an attorney was appointed to represent him on the grand larceny charge. We have followed the holding of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966), that where a defendant in custody requests counsel, police interrogation cannot be undertaken until counsel is provided, and that a confession obtained in violation of this rule may not be used at trial. *State v. Bradley,* _____ W. Va. _____, _____ S.E.2d (1979) (No. 13843); *State v. McNeal,* _____ W. Va. _____, 251 S.E.2d 484 (1978). However, neither *Miranda* nor our cases preclude the defendant from changing his mind and voluntarily giving a confession. *State v. Bradley, supra; see State v. Boyd,* _____ W. Va. _____, 233 S.E.2d 710, 714–715 (1977); *State v. Plantz,* 155 W. Va. 24, 180 S.E.2d 614 (1971).

The critical point as to the invalidity of the confession is that after a guilty plea is entered and an attempt is subsequently made to overturn the plea, the legal issue of the validity of the confession must be judged from the standpoint of the competency of counsel's advice, for the reason we stated in *Sims:*

> "To hold otherwise would destroy counsel's obligation to assess independently the facts and law of his client's case. If counsel views the trial court's rulings to be in error, his obligation is to so advise his client, and if the client so desires, to proceed to trial and appeal the error." [_____ W. Va. at _____, 248 S.E.2d at 838]

Here, the issue of the validity of the confession was resolved against the defendant by the trial court after an *in limine* hearing. While no testimony was taken from the defendant's trial counsel in this habeas corpus hear-

ing, the defendant suggests that after losing the *in limine* motion, it was on his trial counsel's advice that he entered the guilty plea. Even if we assume this to be true, the determinative point is whether the trial counsel should have concluded that the legal issue surrounding the confession was so settled that the trial court was clearly in error in ruling the confession admissible.

In other words, before an initial finding will be made pursuant to the first step of the *Sims* analysis that "counsel did act incompetently" [248 S.E.2d at 835],[2] with respect to advising on legal issues in connection with a guilty plea, the advice must be manifestly erroneous. Here, the legal issue was the validity of the defendant's confession, which the trial court had ruled to be valid. While trial counsel had a duty to assess independently the court's ruling, we do not find under our existing law that the ruling was manifestly erroneous.

It should not be inferred that we are sanctioning the practice by law enforcement officials of counseling criminal defendants to tell the truth or otherwise urging them to confess. On direct appeal, statements or confessions obtained in this fashion will carry a stigma of unconstitutionality. *State v. Casdorph,* _____ W. Va. _____, 230 S.E.2d 476, 479–80 (1976), perhaps represents the outer boundary of condonation of the practice. In this case, we do not deal with a direct appeal after trial, but with a habeas corpus attack on a guilty plea claimed involuntary by reason of incompetent advice of counsel. As stated in *Tollett v. Henderson,* 411 U.S. 258, 267, 36 L. Ed. 2d 235, 243, 93 S.Ct. 1602, 1608 (1973):

---

[2]From Syllabus Point 3 of *State v. Sims,* _____ W. Va. _____, 248 S.E.2d 834 (1978), which reads in its entirety:

"Before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error."

"[W]hile claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief."

The present case illustrates another difficulty which can occur in an attack on a guilty plea after it has been entered. The issue of the defendant's indication on the magistrate's form that he desired counsel was not presented to the trial court at the *in limine* hearing. *Tollett, supra,* recognizes that under the standard of competent counsel:

"[I]t is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." [411 U.S. at 267, 36 L. Ed. 2d at 243, 93 S.Ct. at 1608]

We cannot say that counsel's failure to uncover this fact should be deemed incompetency. Significantly, in the testimony in this habeas corpus proceeding the defendant makes no claim that he had requested counsel at the time of or after his arraignment and prior to his confession. It is not disputed that *Miranda* warnings were given to the defendant at the police station after his arrest, and again two days later, before he gave his confession.

However, even if the defendant were able to demonstrate that his confession was constitutionally invalid, this alone would not result in our holding that his trial counsel was incompetent in counseling the guilty plea. As we stated in the third syllabus of *Sims*, "the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial. ..." Consequently, it must be further shown that the confession formed a substantial part of the proof of the State's case. This has not been done by the relator.

Obviously there are situations in which a confession may be clearly inadmissible, and yet the State may have

sufficient evidence independent of the tainted confession to sustain a conviction. In such a situation, we cannot automatically conclude that the failure *in limine* to suppress the confession induced the guilty plea. The defendant may well have been motivated to enter a guilty plea because he realized there was sufficient independent evidence to sustain a conviction.

Moreover, there is always the questions of a favorable plea bargain that actually brings about the guilty plea. Here, the record contains a written questionnaire which the defendant answered and filed at the time his guilty plea was entered. This questionnaire reflects that the plea was entered pursuant to a plea bargain agreement, but the exact nature of the agreement is not set out.

In the final analysis, we conclude that the trial court was not in error in refusing to grant the relator's writ of habeas corpus. We do not believe that relator established by a preponderance of the evidence that his guilty plea was coerced by incompetent advice of counsel. The only issue raised was the validity of relator's confession, which turned on an application of legal principles to facts that was not so clear that it can be asserted as a matter of law that competent counsel should have urged relator to proceed to trial because a reversal might be achieved on appeal. Additionally, the record is barren of any facts to demonstrate that the confession formed a substantial part of the State's case.

The underlying premise arising from the Brady Trilogy, *Tollett* and our own cases is that a guilty plea based on competent advice of counsel represents a serious admission of factual guilt, and that where an adequate record is made to show it was voluntarily and intelligently entered, it will not be set aside.

The reasoning behind this rule is that in many criminal cases there are numerous facts and legal issues which must be weighed to determine the chances of a successful defense. All too frequently the ultimate result cannot be predicted with any real accuracy, since it hinges on many factors, including the jury's evaluation

of the evidence and the credibility of the witnesses. Aside from these formal legal considerations, there are a number of more personal and subjective factors which are not a part of the formal record, but which may have had a considerable bearing on the individual defendant's decision to enter a guilty plea. All of these factors become even more difficult to assess when they are overlaid with a guilty plea made pursuant to a valid plea bargain.

In light of these circumstances, we are unwilling, in the absence of clear proof of incompetency, to accept the assertion that a guilty plea was induced as a result of incompetent advice of counsel. And even then, as stated in the Third Syllabus of *Sims*, "the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; [and] the guilty plea must have been motivated by this error."

We conclude that the relator has not established that his trial counsel acted incompetently, or that his confession was in fact a substantial part of the State's case, or that his guilty plea was motivated by the alleged act of incompetency. For these reasons, we deny the writ of habeas corpus.

*Writ denied.*