**FILED**

**May 26, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 23-549

_____

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

V.

MATTHEW M.,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Carrie Webster, Judge
Criminal Action No. 09-F-914

AFFIRMED

_____

Submitted: March 4, 2026
Filed: May 26, 2026

Leah Perry Macia, Esq.
Charleston, West Virginia
Attorney for the Petitioner

John B. McCuskey, Esq.
Attorney General
Mary Beth Niday, Esq.
Assistant Attorney General
Sandra M. Walls, Esq.
Assistant Attorney General
Office of the Attorney General
Charleston, West Virginia
Attorneys for the Respondent

JUSTICE TITUS delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "'Whether a formal inquiry as to the mental capacity or competency of a defendant should be ordered is a question to be resolved within the sound discretion of the trial court.' Syllabus Point 3, *State v. Arnold*, 159 W. Va. 158, 219 S.E.2d 922 (1975), *overruled on other grounds by State v. Demastus*, 165 W. Va. 572, 270 S.E.2d 649 (1980)." Syl. Pt. 1, *State v. Chapman*, 210 W. Va. 292, 557 S.E.2d 346 (2001).

2. "'A guilty plea based on competent advice of counsel represents a serious admission of factual guilt, and where an adequate record is made to show it was voluntarily and intelligently entered, it will not be set aside.' Syl. pt. 3, *State ex rel. Burton v. Whyte*, 163 W. Va. 276, 256 S.E.2d 424 (1979)." Syl. Pt. 1, *State v. Moore*, 179 W. Va. 288, 367 S.E.2d 757 (1988).

3. "'Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995)." Syl. Pt. 1, *State v. Riggleman*, 238 W. Va. 720, 798 S.E.2d 846 (2017).

4. "One may be charged with contempt for violating a court's order, of which he has actual knowledge, notwithstanding that at the time of the violation the order had not yet been formally drawn up." Syl. Pt. 2, *Hendershot v. Handlan*, 162 W. Va. 175, 248 S.E.2d 273 (1978).

5. "Generally, an order is effective when a court announces it." Syl. Pt. 1, *Moats v. Preston Cnty. Comm'n*, 206 W. Va. 8, 521 S.E.2d 180 (1999).

6. "As provided in Rule 11(h) of the West Virginia Rules of Criminal Procedure, a violation of Rule 11 does not necessarily require automatic reversal or vacatur. Rather, when a defendant claims that a circuit court failed to comply with Rule 11, a straightforward, two-step harmless error analysis must be conducted: (1) Did the circuit court in fact vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant?" Syl. Pt. 7, *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 465 S.E.2d 185 (1995).

7. "The harmless error rule of Rule 11(h) of the West Virginia Rules of Criminal Procedure should be applied when the factual evidence is clear that no substantial rights of the defendant were disregarded." Syl. Pt. 2, *State v. Valentine*, 208 W. Va. 513, 541 S.E.2d 603 (2000).

**TITUS, Justice:**

The petitioner, Mathew M.,[1] appeals the circuit court's orders accepting his binding plea agreement and sentencing him on three counts of sexual abuse by a parent, guardian, custodian or person in a position of trust.[2]  On appeal, the petitioner asserts that the circuit court erred by failing to make: (1) the statutorily required findings regarding his competency at the hearing on this issue; (2) additional inquiry into his competency before accepting his plea; and (3) the required finding of voluntariness before accepting his plea. We find that the circuit court did not err, and thus, we affirm the petitioner's convictions and sentence.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In November 2009, the petitioner was indicted on the following eleven counts:  (1) two counts of sexual assault in the first degree; (2) four counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child; (3) one count of incest; (4) three counts of sexual abuse in the first degree; and (5) one count of employment

---

[1] We use initials where necessary to protect the identities of those involved in this case.  *See* W. Va. R. App. P. 40(e).

[2] The specific order on appeal, which resentenced the petitioner for purposes of this direct appeal, was entered on August 21, 2023.

or use of a minor to produce obscene matter and assist in doing sexually explicit conduct.[3] Following his indictment, the petitioner moved for a forensic evaluation regarding his competency to stand trial and criminal responsibility. In an Agreed Order entered on January 26, 2010, the circuit court ordered the petitioner to "undergo an initial forensic examination [with Dr. Bobby Miller] to determine his competency to stand trial and, if only he is determined to be competent, to determine whether he [was] not guilty of the crimes charged by reason of mental illness[.]" In a report dated March 22, 2010, Dr. Miller opined that although the petitioner exhibited a rational and factual understanding of the proceedings against him, he did not exhibit "a sufficient present ability to consult with his attorney with a reasonable degree of understanding." In addition, Dr. Miller opined that the petitioner could be "restored to competence utilizing intensive inpatient psychiatric hospitalization within a reasonable amount of time."

After receipt of Dr. Miller's report, the circuit court preliminarily found that the petitioner was not competent to stand trial but was "likely to regain competency within the next three months[.]" In an Agreed Order entered on April 1, 2010, the circuit court's preliminary finding became final after the petitioner waived his right to request a competency hearing. At that time, the petitioner was committed to William R. Sharpe, Jr. Hospital ("Sharpe Hospital") for competency restoration services and for a competency

---

[3] The victim of these crimes was the petitioner's four-year-old stepdaughter.

evaluation. On July 22, 2010, the Clinical Director of the Department of Health and Human Services informed the circuit court that the petitioner was competent to stand trial. This finding was based upon a competency evaluation that had been performed by Dr. Edward Miltenberger on July 9, 2010. Dr. Miltenberger opined that, at the time of his evaluation, the petitioner had a "sufficient present ability to consult with this lawyer with a reasonable degree of rational understanding and did have a rational and factual understanding of the proceedings against him." It was recommended that the petitioner continue taking his medications to ensure his stability and continuity of care while he awaited trial. Thereafter, the petitioner was transported from Sharpe Hospital to South Central Regional Jail while he awaited his competency hearing.

At the outset of the petitioner's competency hearing on August 3, 2010, his counsel acknowledged that the petitioner had the right to challenge Sharpe Hospital's determination that the petitioner was competent to stand trial, but he did not object to the circuit court entering an order "finding [the petitioner] competent." In fact, counsel for the petitioner informed the circuit court that the petitioner was "more lucid than he's ever been[,]" and he further indicated that he agreed with Sharpe Hospital's finding that the petitioner was competent. Thereafter, counsel for the petitioner addressed the following three issues: (1) medications; (2) medical records from Sharpe Hospital; and (3) bond reduction. Initially, counsel for the petitioner expressed concern that if South Central Regional Jail failed to provide the petitioner with the medications that had been prescribed

3

by practitioners at Sharpe Hospital, the petitioner would cease to be competent. Counsel also indicated that it was his understanding that South Central Regional Jail had altered the petitioner's medications. The circuit court responded to this concern by directing counsel for the petitioner to confer with the jail's health care administrator about the administration of medications to the petitioner. If counsel was unable to confer with the health care administrator, he was directed to prepare an order that would require such a conference. With respect to the other two issues, the circuit court directed Sharpe Hospital to provide its records to counsel for the petitioner, and it directed counsel for the petitioner to file a written motion for bond reduction.

As for the determination of competency, counsel for the petitioner indicated that he would be "comfortable" with the circuit court making the required findings in a written order. Instead, the circuit court orally made the following findings and rulings: (1) the petitioner had previously been found to be "not competent" and had been committed to Sharpe Hospital; (2) Dr. Miltenberger performed a competency evaluation and opined that the petitioner was now competent; (3) the circuit court incorporated Dr. Miltenberger's findings; and (4) the circuit court concluded that the petitioner was competent to stand trial.

The circuit court then directed counsel for the petitioner to prepare an order memorializing its findings. However, an order from this hearing was never entered.[4]

Following the competency hearing, the petitioner and the State entered into a binding plea agreement pursuant to Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure. Pursuant to the plea agreement, (1) the petitioner agreed to enter guilty pleas to three counts of sexual abuse by a parent, custodian, or person in a position of trust;[5] (2) the State agreed to dismiss the remaining eight counts of the indictment; and (3) the parties agreed that the petitioner would be sentenced to indeterminate terms of not less than ten years nor more than twenty years on each count, with the sentences to run consecutively.

At the plea hearing on October 18, 2010, the circuit court explained the constitutional and statutory rights that the petitioner was waiving by entering his guilty pleas. Specifically, the circuit court advised the petitioner that by pleading guilty, he was waiving his right to a jury trial and everything that accompanies a trial including, but not

---

[4] It is undisputed that an order memorializing the circuit court's findings and directives was not entered. The petitioner does not explain this failure, and the State indicates that the record does not explain this failure.

[5] The three charges the petitioner ultimately pled guilty to are those found in Counts Two, Four and Six of the indictment.

limited to, the requirement to have the State prove the elements of each offense beyond a reasonable doubt, the right to remain silent or testify on his own behalf, and the right to confront witnesses and to challenge the evidence. The petitioner affirmed that he understood the rights he was waiving by pleading guilty.

Additionally, the circuit court inquired about the petitioner's mental state when it asked him if he was "of clear mind" at the hearing, and he responded, "I guess" and "I'm pretty good competent [sic]." The petitioner also indicated that he was satisfied with the representation provided by his trial counsel and that he believed that entering into the binding plea agreement was in his best interest. Although the petitioner was unable to remember the facts surrounding Count Two of the indictment and could not lay a foundation for his guilty plea to that count, he agreed with the State's proffer and entered written and oral pleas of guilty to three counts of sexual abuse by a parent, custodian, or person in a position of trust.[6] The circuit court found that the petitioner knowingly and intelligently waived his constitutional rights and that he knowingly and intelligently entered guilty pleas to counts Two, Four, and Six of the indictment. The circuit court then proceeded to sentence the petitioner to three indeterminate terms of not less than ten nor more than twenty years in the penitentiary to run consecutively.

---

[6] The petitioner did not remember the facts surrounding Count Two of the indictment and could not lay a foundation.

6

Over ten years later, on April 19, 2021, the petitioner filed a Motion to Resentence for Direct Appeal Purposes. In his motion, the petitioner alleged that although he "requested consultation on appeal," he was "kept 'in the dark' as to his appellate options" and lost his opportunity to directly appeal his case. On January 13, 2023, the circuit court granted the motion to resentence, and on August 21, 2023, the circuit court entered an order resentencing the petitioner so that he could file this direct appeal.

## II.

### STANDARD OF REVIEW

The petitioner argues that the circuit court failed to make the statutorily required findings regarding his competency; violated his due process rights by failing to perform additional inquiry into his competency before accepting his guilty plea; and failed to make the required findings of voluntariness before accepting his guilty plea.

With respect to competency, we have held that,

> '[w]hether a formal inquiry as to the mental capacity or competency of a defendant should be ordered is a question to be resolved within the sound discretion of the trial court.' Syllabus Point 3, *State v. Arnold*, 159 W. Va. 158, 219 S.E.2d 922 (1975), *overruled on other grounds by State v. Demastus*,

7

165 W. Va. 572, 270 S.E.2d 649 (1980).

Syl. Pt. 1, *State v. Chapman*, 210 W. Va. 292, 557 S.E.2d 346 (2001).

As for the petitioner's claims regarding his guilty plea, "'[a] guilty plea based on competent advice of counsel represents a serious admission of factual guilt, and where an adequate record is made to show it was voluntarily and intelligently entered, it will not be set aside.' Syl. pt. 3, *State ex rel. Burton v. Whyte*, 163 W. Va. 276, 256 S.E.2d 424 (1979)." Syl. Pt. 1, *State v. Moore*, 179 W. Va. 288, 367 S.E.2d 757 (1988).

Finally, "'[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995)." Syl. Pt. 1, *State v. Riggleman*, 238 W. Va. 720, 798 S.E.2d 846 (2017).

**III.**

**DISCUSSION**

In his appeal before this Court, the petitioner argues that the circuit court erroneously failed to: (1) make the statutorily required findings regarding his competency at his competency hearing; (2) perform additional inquiry into his competency before accepting his guilty plea; and (3) make the required findings of voluntariness before accepting his guilty plea. We find that the circuit court did not err.

8

A.    Statutorily Required Findings Regarding Competency

In his first assignment of error, the petitioner generally asserts that the circuit court "failed to make the statutorily required findings regarding competenc[y]." West Virginia Code § 27-6A-3(c) (2007) provided:

> The court of record pursuant to a preliminary finding or hearing on the issue of a defendant's competency to stand trial and with due consideration of any forensic evaluation conducted pursuant to sections two and three of this article shall make a finding of fact upon a preponderance of the evidence as to the defendant's competency to stand trial based on whether or not the defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and whether he or she has a rational as well as a factual understanding of the proceedings against him or her.

*Id.*

According to the petitioner, the circuit court's oral finding of competency did not meet the statutory requirements because the circuit court "did not specifically address [the petitioner's] ability to consult with and assist his attorney, or whether he had a factual and rational understanding of the proceedings against him." The record belies this assertion.

As noted above, during the August 3, 2010 competency hearing, the circuit court expressly "incorporate[d]" Dr. Miltenberger's findings and "based on the findings"

in Dr. Miltenberger's report, the circuit court found the petitioner competent to stand trial.[7]

The relevant findings that were incorporated by the circuit court are as follows: "[the petitioner] did have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and did have a rational and factual understanding of the proceedings against him." These findings track the language of West Virginia Code § 27-6A-3(c).

Intertwined in this assignment of error is the circuit court's failure to enter an order memorializing its findings and conclusions from the August 3, 2010, competency hearing. Although the petitioner complains about this failure, he fails to cite any authority requiring the entry of a written order or that otherwise supports the argument that the absence of a written order requires that his guilty plea be set aside.[8]

---

[7] As part of this assignment of error, the petitioner argues that the circuit court's "attempt at finding competency was not sufficient to support [his] subsequent guilty plea." We decline to address this argument as it is unsupported. Further, we do not agree with the petitioner's characterization of the circuit court's finding of competency being merely an "attempt." The circuit court clearly found the petitioner to be competent at the August 3, 2010, hearing.

[8] We caution the petitioner that "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996); *See also* W. Va. R. App. P. 10(c)(7) (requiring clear citations to points of fact *and law* presented).

During the petitioner's competency hearing, the preparation of the order was mentioned several times. Counsel for the petitioner indicated that the circuit court should make the required findings—the findings that are now at issue—"in a written order." A review of the record reveals that the circuit court intended for the petitioner's counsel to prepare the order. Ultimately, the State offered, and the circuit court agreed, that the State would provide a form order to the petitioner's counsel to assist him in drafting the order. While discussing the circuit court's order that South Central Regional Jail should "provide a medical regime consistent with what Sharpe Hospital order[ed,]" the circuit court directed counsel for the petitioner to include language that effectively prohibited any potential deviation from that medical regime that was economically (rather than medically) based. As for the timing of the preparation of the order, counsel for the petitioner indicated that he would do his "best to get that done today, although the clock is ticking[.]" The circuit court responded that the order did not have to be prepared that day as it had already "made an oral finding of competence."

Although not cited by the petitioner, West Virginia Trial Court Rule 24.01, which was in effect at the time of the August 3, 2010 hearing, governs the preparation and submission of orders to trial courts, and it provides, in relevant part:

> (a) Unless otherwise directed by the presiding judicial officer, all orders shall be submitted to the judicial officer promptly, but no later than eleven (11) days after having been directed to do so by the court. When counsel responsible for the preparation and presentation of an order unreasonably delays or withholds

11

> its presentation, the order *may* then be prepared and entered by the judicial officer.

(Emphasis added). It is undisputed and certainly unfortunate that the circuit court did not enter an order memorializing its findings and conclusions from the August 3, 2010, hearing. This failure, however, is not dispositive of this issue.

We begin our analysis of this issue by acknowledging the principle that a court of record speaks only through its orders. *See State ex rel. Erlewine v. Thompson*, 156 W. Va. 714, 718, 207 S.E.2d 105, 107 (1973) ("A court of record speaks only through its orders[.]"). However, as we noted in *State v. Keefer*, 247 W. Va. 384, 387, 880 S.E.2d 106, 109 (2022), "reliance on the principle that a court of record speaks only through its orders [can be] misplaced[.]" In *Keefer*, the circuit court denied the appellant's motion to reduce her criminal sentence as untimely because it was filed more than 120 days after the sentencing hearing where the sentence was verbally announced by the circuit court.[9] On appeal to this Court, the appellant argued that "because a circuit court speaks only through its orders, the 120-day time frame [did] not begin until the sentencing order [was] entered." *Id.* This Court disagreed and concluded that "a sentence is 'imposed' for purposes of Rule

---

[9] The appellant's motion to reduce her sentence in *Keefer* was filed pursuant to Rule 35(b) of the West Virginia Rules of Criminal Procedure, which provides that, "[a] motion to reduce a sentence may be made, or the court may reduce a sentence without motion within 120 days after the sentence is imposed[.]"

12

35(b) of the West Virginia Rules of Criminal Procedure when the sentence is verbally pronounced at the sentencing hearing." *Id.* at 385, 880 S.E.2d at 107, Syl. Pt. 4, in part.

As this Court noted in *Keefer*, there are circumstances where an oral order is effective even when a written order has not yet been entered. *See* Syl. Pt. 2, *Hendershot v. Handlan*, 162 W. Va. 175, 248 S.E.2d 273 (1978) ("One may be charged with contempt for violating a court's order, of which he has actual knowledge, notwithstanding that at the time of the violation the order had not yet been formally drawn up."). *See also* Syl. Pt. 1, *Moats v. Preston Cnty. Comm'n,* 206 W. Va. 8, 521 S.E.2d 180 (1999) ("Generally, an order is effective when a court announces it."). Further, it bears noting that "[a] circuit court is a court of record, and this Court has held that it speaks only by its record, and that what does not appear from its record does not exist in law." *Powers v. Trent*, 129 W. Va. 427, 432, 40 S.E.2d 837, 839 (1946) (internal citation omitted).

Given the record created below on this issue, which clearly incorporated Dr. Miltenberger's findings that the petitioner had the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and that the petitioner had a "rational and factual understanding of the proceedings against him," we find no reversible error.

B.    Additional Inquiry Into Competency

In his second assignment of error, the petitioner alleges that the circuit court violated his due process rights by failing to "perform additional inquiry into his competency" before it accepted his guilty plea on October 18, 2010.  This assignment of error is based upon, among other things, speculation that the petitioner "could well have decompensated" between the date of his competency hearing on August 3, 2010, and the date of his plea hearing on October 18, 2010.

Due process considerations, such as those raised by the petitioner, are of "paramount importance prior to the acceptance of a guilty plea by the trial court." *State v. Hatfield*, 186 W. Va. 507, 514, 413 S.E.2d 162, 169 (1991) (internal citation omitted). Further, the petitioner correctly points out that "additional due process measures are required where [a] defendant's past mental history raises a 'bona fide doubt' as to his competency[.]"  *State v. Garrett*, 182 W. Va. 166, 174, 386 S.E.2d 823, 831 (1989) (internal citation omitted).   In *State v. Sanders*, 209 W. Va. 367, 549 S.E.2d 40 (2001), this Court concluded that a failure to conduct further inquiry into a defendant's competency "once the issue has come to the attention of the court" presumptively violated a defendant's procedural due process rights.  *Id*. at 377, 549 S.E.2d at 50.  Further, this Court permitted a defendant to withdraw a plea when the record demonstrated that a proper hearing had not been conducted.  *See State ex rel. Kessick v. Bordenkircher*, 170 W. Va. 331, 294 S.E.2d 134 (1982).

14

The petitioner argues that the circuit court was obligated to make additional inquiry about his competency prior to accepting his plea because of his history of mental illness[10] and because he "could well have decompensated" if he had not been properly medicated between his competency hearing and his plea hearing. In addition, the petitioner asserts that his inability to lay a factual foundation for one of his guilty pleas also supports his argument in this regard.

The petitioner claims that his history of mental illness required the circuit court to conduct additional inquiry into his competency before accepting his guilty plea. However, this issue is not nearly as straightforward as the petitioner contends. In order for him to prevail on this assignment of error, the circuit court must have been "presented with new evidence casting serious doubt on the validity of the earlier competency finding." Syl. Pt. 4, in part, *Sanders*, 209 W. Va. 367, 549 S.E.2d 40. The petitioner contends that "additional due process measures are required where the defendant's past mental history raises a 'bona fide' doubt as to his competency[.]" *Garrett*, 182 W. Va. at 174, 386 S.E.2d at 831, and he is correct. However, "even if there was a history of mental illness, under West Virginia law that would not, in and of itself, render a defendant incompetent to enter

_____

[10] The petitioner refers to prior diagnoses of bipolar disorder, impulse disorder, borderline personality disorder, polysubstance abuse, borderline intellectual functioning, and seizure disorder. He also referenced multiple suicide attempts and the need for specific medications to maintain his competency.

15

a knowing and voluntary plea." *Ray v. Pszczolkowski*, No. 16-0022, 2017 WL 663573, at *9 (W. Va. Feb. 17, 2017) (memorandum decision). It appears undisputed that the petitioner had a history of mental illness. Dr. Miltenberger's report indicated that the petitioner had previously been diagnosed with "ADHD, borderline personality disorder, polysubstance abuse, [and] seizure disorder." By the time of the plea hearing, the circuit court and the parties were aware of the petitioner's history of mental illness, yet neither the petitioner nor his counsel asserted that this history required the circuit court to conduct additional inquiry into the petitioner's competence. To the contrary, counsel for the petitioner told the circuit court that the petitioner had "regained competency." For these reasons, we reject the petitioner's request to find a history of mental illness, in and of itself, requires additional inquiry into competence.

The petitioner's claim that he "could well have decompensated" if he had not been properly medicated as recommended by Sharpe Hospital is equally unpersuasive and purely speculative. Neither the petitioner nor his counsel made any such claim at the plea hearing, and he does not make that claim before this Court. Instead, the petitioner's claim is couched in terms of what "could" have happened. Regardless, contrary to this assertion, counsel for the petitioner affirmatively stated during the plea hearing that the petitioner was on medication. Specifically, after discussing the initial incompetency ruling, counsel for the petitioner stated "[s]ince then, of course, he has regained competency, *he's on*

16

*medication*, and it may be that he will – he would be capable of" laying the factual foundation for Counts Four and Six. (Emphasis added.)

We now turn to the petitioner's claim that the circuit court was faced with "more cause to question" his competency due to the possibility that he would be unable to lay a factual foundation for Count Two of his plea agreement. At the plea hearing, counsel for the petitioner represented to the circuit court that he was not sure if the petitioner could lay a factual foundation for Count Two of the indictment because "he just doesn't remember." The State counters that memory lapses are ordinary, and that the type of forgetfulness present in this case is not enough to cast serious doubt about the petitioner's competency. *See Dye v. Cowan*, 472 F.2d 1206, 1207 (5th Cir. 1972) (holding that "claims of limited lapses of memory are not in and of themselves evidence of mental incompetence to stand trial"). We agree. According to counsel for the petitioner, the petitioner "just [didn't] remember." He did, however, affirmatively agree with the proffer of evidence provided by the State.

Despite the petitioner's arguments to the contrary, we discern no new evidence, which casts serious doubt on the circuit court's earlier competency finding. *Sanders*, 209 W. Va. 367, 549 S.E.2d 40. To the contrary, prior to accepting the petitioner's plea, the circuit court conducted an extensive colloquy with the petitioner, which revealed the following:  1) the petitioner was represented by counsel throughout the proceedings below, and at the plea hearing, he indicated to the circuit court that he was fully satisfied

17

with the representation provided by his counsel; (2) counsel for the petitioner had previously represented that he thought the plea agreement was in the petitioner's best interest; (3) with respect to the factual foundation for the three counts that were the subject of the plea agreement, counsel for the petitioner confirmed that the petitioner admitted to performing the acts alleged in Counts Four and Six, and as to Count Two, he believed that the petitioner's failure to deny those allegations could be construed as an admission; (4) counsel for the petitioner confirmed that the petitioner was aware that he would be precluded from seeking an alternative sentence and was also aware that he was binding himself to the maximum possible sentence for the three counts to which he was entering a plea; (5) the petitioner affirmatively indicated that he understood the rights that he was waiving by pleading guilty and not proceeding to trial; (6) when asked about his mental state, the petitioner responded that he "guess[ed]" that he was of clear mind, that he was "pretty good competent [sic]," that he understood what the circuit court was saying, and he understood the matters set forth by his counsel and the State; (7) the petitioner responded in the affirmative when asked if he believed the plea agreement was in his best interest; (8) the petitioner also responded in the affirmative when asked if he agreed with the State's proffer of the evidence it would present if the case proceeded to trial; (9) counsel for the petitioner confirmed that he reviewed the requirements of the sexual offender registration with the petitioner and that the petitioner had signed the acknowledgment of the registration requirements; and (10) the petitioner entered oral and written pleas to three counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust.

18

For these reasons, we conclude that the circuit court did not err in failing to conduct any additional inquiry into the petitioner's competency prior to accepting his plea.

C.     Voluntariness

In his final assignment of error, the petitioner alleges that the circuit court failed to make the required finding of voluntariness before it accepted his guilty plea. "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal citation omitted).

The petitioner's argument focuses on Rule 11(d) of the West Virginia Rules of Criminal Procedure which provides:

> The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

Specifically, the petitioner focuses on the last sentence of Rule 11(d) and argues that the circuit court "failed to inquire whether [his] willingness to plead guilty resulted from prior discussions between himself and the assistant prosecutor or his attorney."

19

Simply put, the petitioner argues that he should be permitted to set aside his guilty plea because the circuit court's plea colloquy did not strictly comply with Rule 11(d).[11]  This argument, however, does not take into consideration subsection (h) of Rule 11, which states that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."  With respect to violations of Rule 11, this Court has previously held:

> As provided by Rule 11(h) of the West Virginia Rules of Criminal Procedure, a violation of Rule 11 does not necessarily require automatic reversal or vacatur.  Rather, when a defendant claims that a circuit court failed to comply with Rule 11, a straightforward, two-step harmless error analysis must be conducted: (1) Did the circuit court in fact vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant?

Syl. Pt. 7, *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 465 S.E.2d 185 (1995).  "The harmless error rule of Rule 11(h) of the West Virginia Rules of Criminal Procedure should be applied when the factual evidence is clear that no substantial rights of the defendant were disregarded."  Syl. Pt. 2, *State v. Valentine*, 208 W. Va. 513, 541 S.E.2d 603 (2000).

---

[11] As we did in the petitioner's first assignment of error, we again caution the petitioner about his failure to cite legal authority in support of this argument.  "'Briefs with arguments that do not contain a citation to legal authority to support the argument presented ... as required by Rule 10(c)(7)' are not in compliance with this Court's rules." *Westfield Grp. Ins. v. Ohio Build and Remodel, LLC*, No. 18-1142, 2020 WL 1236918, at *2 (W. Va. Mar. 13, 2020) (memorandum decision) (internal citation omitted).

A review of the record confirms that the circuit court did not *ask* a specific question about "whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney." The circuit court did, however, "place on the record" that "counsel for [the petitioner] and [counsel for the State] . . . had conferred about this earlier and represented that [counsel for the petitioner] thought [the plea agreement] was in [the petitioner's] best interest." Given this comment, it is reasonable to conclude the following: (1) the circuit court technically varied from the Rule 11(d) requirement to "inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney" as required by Rule 11(d); and (2) counsel for the parties had previously informed the circuit court of their discussions and the petitioner's willingness to enter a plea. Given these facts, we assume, *without deciding*, that there was a technical variance so that we can address the second question enunciated in *Brewer* given the posture of this case and the arguments regarding competency.

Having characterized this assignment of error as a rule violation that should result in the setting aside of his guilty plea, the petitioner focuses on the circuit court's failure to make a specific inquiry rather than, whether the failure affected his substantial rights. Instead, he asserts generally that because the circuit court failed to ask this one

21

question, the circuit court could not determine whether the petitioner voluntarily entered his guilty plea.[12] Our precedent and the record refute this assertion.

Other courts have noted that the purpose of the inquiry at issue is "for the trial court to ascertain whether the plea of guilty is the result of plea negotiations." *See, e.g., State v. Brame*, 997 N.W.2d 858, 863 (N.D. 2023). Despite the circuit court's failure to ask the specific question complained of in this assignment of error, the record clearly shows that the parties engaged in plea negotiations prior to the plea hearing. In fact, the circuit court "place[d] on the record" that counsel for the petitioner and counsel for the State had "conferred about this earlier" and indicated that counsel for the petitioner thought that entering into the plea agreement was in his client's best interest. In addition, the State represented that the victim's mother similarly believed that the plea agreement was in the best interest of the State and the victim. With respect to the plea agreement, the circuit court found that the parties "made a very reasoned approach" in deciding to enter into the plea agreement.

---

[12] Although the petitioner did not allege a due process violation with respect to this assignment of error, we note that "[d]ue process only requires that a guilty plea be voluntary, knowing, and intelligent." *State ex rel. Vernatter v. Warden W. Va. Penitentiary*, 207 W. Va. 11, 19–20, 528 S.E.2d 207, 215–16 (1999).

"While we think the best approach for a judge is to adhere to the strict requirements of Rule 11 and we advise our circuit courts to do so, like the federal courts, we refuse to exalt form over substance in Rule 11 hearings." *Valentine*, 208 W. Va. at 517, 541 S.E.2d at 607. Based upon this record, we conclude that the petitioner has failed to show a reasonable probability that strict compliance with Rule 11 would have led to either the entry of a different plea or a decision by the petitioner to decline to enter the plea that is the subject of this appeal. Any Rule 11 violation therefore did not affect his substantial rights. *See United States v. Delgado-Ramos*, 635 F.3d 1237, 1241 (9th Cir. 2011) ("[B]ecause [the defendant] does not assert on appeal that he would not have entered the plea but for the district court's alleged error, he has not demonstrated the probability of a different result and thus cannot show that the district court's action affected his substantial rights." (cleaned up)). Therefore, the circuit court's failure to strictly comply with the Rule 11(d) inquiry at issue was harmless error and we refuse to set aside the petitioner's guilty plea.[13]

### IV.

### CONCLUSION

---

[13] With respect to the petitioner's assertion that this assignment of error is "especially problematic" given what he describes as his "questionable competence," we again note that counsel for the petitioner informed the circuit court at the plea hearing that the petitioner had "regained competency" and was "on medication."

For the reasons explained above, we affirm the August 21, 2023, order of the Circuit Court of Kanawha County resentencing the petitioner for his three convictions of the felony offense of sexual abuse by a parent, guardian, custodian, or person in a position of trust.

Affirmed.